George Metz, Appellant, v. Sophia E. Dionne, Appellee.

Gen. No. 32,825.

Opinion filed November 19, 1928.

PEDEN, KAHN & MURPHY, for appellant; GERALD RYAN, of counsel.

IRVING B. CAMPBELL and JOHN T. RICHARDS, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Complainant filed his bill to foreclose a purchase-money mortgage for $4,000, made by the defendant. The cause proceeded to a decree and sale with a deficiency of $1,054.46, for which complainant asked a personal judgment against the defendant. The chancellor denied this, holding that by certain acts of the complainant the defendant had been released from personal liability on her note. Complainant appeals to this court for reversal of this order.

May, 1925, complainant was the owner of real estate which he sold to defendant for $6,500, terms $1,500 cash, defendant's note for $4,000 secured by a second mortgage and subject to a prior mortgage of $1,000. This sale was negotiated by L. J. Carroll, a real estate broker.

Later defendant sold the property for $7,000 to James and Ruth Vail, who took possession. Apparently they fell behind in their payments due defendant, and Carroll arranged with the South Shore State Bank to make a new first mortgage for $3,000 to the Vails, who signed the application, notes and trust deed and paid Carroll a commission. The bank would not pay out the money until an agreement was obtained from complainant that the $4,000 mortgage of defendant held by him should be subordinated to the new $3,000 Vail mortgage held by the bank. To this end a contract was drawn and Carroll gave it to complainant to sign. Complainant afterwards executed this subordination agreement and took it to the Chicago Title & Trust Company where he met Carroll and a representative of the bank, and delivered it. The bank then paid out the money on the $3,000 Vail mortgage, paying the first mortgage of $1,000, and after paying expenses and

commissions paid the balance to the defendant on account of the indebtedness from the Vails to her. The matter then stood that the bank, by virtue of the subordination agreement of the complainant, held a first mortgage for $3,000 made by the Vails, complainant held a second mortgage (the one made by the defendant) for $4,000, and the Vails were in possession of the property. Subsequently they defaulted on the second mortgage and this bill was filed to foreclose it.

The defendant asserted that she was released from personal liability on her note by the act of complainant in subordinating the mortgage made by her to the $3,000 Vail mortgage held by the bank. The master in chancery and the chancellor agreed with this contention and so held.

Complainant urges that Carroll, in securing the mortgage for the Vails and the subordination agreement from complainant, was acting as the agent of and on behalf of the defendant. The evidence does not substantiate this claim. The defendant testified that she did not ask Carroll to procure the $3,000 mortgage and she did not know how the Vails arranged to raise the money. The Vails paid Carroll a commission for negotiating the transaction. Complainant was told when he delivered the subordination agreement that "Mrs. Dionne (the defendant) was going to get out." It is evident that Carroll was acting for the Vails so as to make it possible for them to carry the property.

There is some suggestion that Carroll deceived complainant when he procured his signature to the subordination agreement, but the evidence as to this is not definite. In any event, as Carroll was acting for the Vails and not for the defendant, nothing that he did can be charged against her.

Did the agreement by complainant to subordinate the $4,000 mortgage made by defendant to the new $3,000 mortgage made by the Vails release the defendant from personal liability on her note? No decided

cases precisely in point as to the facts have been presented. The case calls, however, for the application of the general principle that, where the holder of a mortgagor's notes makes a contract with the mortgagor's grantee, which changes the original obligation of the mortgagor, such an agreement releases the original obligor or mortgagor. That this is the rule seems too well settled to require citation of authority. It has been applied in some cases (the decisions are not in harmony) where the mortgagee makes an extension agreement with the mortgagor's grantee. See *Albee v. Gross,* 250 Ill. App. 98, where that question is discussed at length with a large list of decided cases. See also *In re Roth,* 272 Fed. 516, with a large number of cases. The general rule is there stated that, if the mortgagee sees fit to enter into contractual relations with the grantee of the mortgagor, then the mortgagee "makes himself a party thereto, and must in so contracting and henceforward deal with the parties in view of that changed relationship. This imposes upon him no hardship, and does not against his will alter his original contract. If he by this contract with the grantee * * * alters the terms of the original obligation, no good reason is perceived why the rule applicable as between principal and surety should not be applied to him."

Applying this general rule to the facts before us, we have little difficulty in arriving at the conclusion that the defendant was released from personal liability upon her notes. She agreed to pay $4,000, subject to a prior incumbrance of only $1,000. By the subordination agreement she became obligated to pay $4,000, subject to a prior incumbrance of $3,000. We know of no rule that would permit a debtor's obligation to be so adversely altered by the creditor without the debtor's consent.

The property was sold to complainant at the foreclosure sale for $3,500, subject to the $3,000 mortgage made by the Vails. It is self-evident that property sold at foreclosure of a second mortgage subject to a prior mortgage of $3,000, would not bring as much as at a sale subject to a prior mortgage of $1,000. It is reasonable to conclude that if there had been no subordination, there would have been no deficiency.

Complainant urges that he is entitled to a personal judgment upon the general equities presented—balancing the alleged gains of one party against the losses of the other—but the right to a personal judgment in foreclosure proceedings does not rest on general equity principles but upon the legal obligation of the maker of the note.

We hold that the chancellor properly denied the application for a personal judgment and the order is affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.