THEODORE J. WILLIAMS, Plaintiff-Appellant, *v.* ESTATE OF CORNELIUS C. CROSS, Deceased, Spencer F. Goodman, Special Administrator, Defendant-Appellee.

First District (1st Division)   Nos. 79-1387, 79-1595 cons.

Opinion filed June 16, 1980.—Rehearing denied July 21, 1980.

Howard T. Savage, of Chicago, for appellant.

William E. Holland, of Montgomery & Holland, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Theodore Williams filed a complaint against Cornelius Cross[1] seeking partition of three parcels of real estate located in Chicago. The properties are situated at 6710 South Evans Avenue (Evans property), 6946 South

---

[1] Cornelius Cross died after the hearing on this matter.

Dorchester Avenue (Dorchester property), and 7637 South Prairie Avenue (Prairie property). The trial court found that plaintiff and his mother Elizabeth Cross had perpetrated a constructive fraud upon defendant and ordered plaintiff to convey his interest in the Dorchester and Prairie properties to defendant. The court also ordered plaintiff to repay $12,000 which defendant had given to plaintiff after the death of Mrs. Cross. Plaintiff appeals only those portions of the trial court's judgment concerning the Prairie property and the return of $12,000.

We affirm.

On appeal, Williams contends (1) that the trial court's finding of constructive fraud is not supported by the evidence and (2) that the trial court erred in ordering him to return $12,000 to Cross.

The Evans property was acquired in 1942 by the plaintiff's father and mother. His father died in 1945 and his mother married the defendant Cross in 1951. Prior to the marriage, Mr. Cross signed a prenuptial agreement by which he waived any interest in the Evans property. The property was thereafter put into trust. Williams and his mother Elizabeth Cross were the beneficiaries.

The Dorchester property was purchased in October 1954. The downpayment on this property was comprised of money from the salaries of Mr. and Mrs. Cross. Mr. Cross secured a mortgage for the remainder of the purchase price. The final mortgage payment was made in 1960 or 1961.

The Prairie property was acquired in late March or early April 1957. Mr. and Mrs. Cross resided in the bungalow situated on this property. At the time the property was purchased, Mr. Cross was unable to secure a mortgage because he was the mortgagor on two other pieces of property. Cross testified that Williams was a "voucher" for him and that Williams signed the mortgage so that Mr. and Mrs. Cross could purchase the Prairie property. He further testified that he signed the mortgage at the request of the bank agent.

The mortgage, insurance, and tax payments on the Prairie property were made by Mr. and Mrs. Cross. Mr. Cross testified that the mortgage payments were comprised of monies from his and his wife's salaries and that he intended that only he and his wife have an interest in the property. Mr. Williams never informed Cross that Cross' name was not on the deed, and Mr. Cross stated that he did not learn of this fact until the partition action was filed.

Williams testified that he signed the mortgage and note so that his mother could secure the same since, at the time the Prairie property was purchased, women could not obtain mortgages alone. He further testified that he secured the mortgage with Mr. Cross for Mrs. Cross, but that she also told him it would be a wise investment. Williams admitted in a

deposition that he did not contribute to the payment of the mortgage, taxes, or insurance on the Prairie property. He further testified that his mother requested that the property be deeded to herself and Williams only. However, Mr. Cross signed the mortgage at the request of the bank agent.

In 1969, the Evans, Dorchester, and Prairie properties were placed in joint tenancy. Williams and Mr. and Mrs. Cross became joint tenants in these properties through various conveyances. Williams testified that Mrs. Cross initiated the transactions in December 1968, and that Mr. Cross acquiesced to the conveyances. Mr. Cross, however, stated that he agreed to the transactions only because he was "talked into it" by his wife. He stated that he and his wife had planned a vacation and his wife wanted Williams to have the properties in the event that they met with a common disaster. Mr. Cross agreed to the transactions because his wife promised that the properties would be reconveyed upon their return from the trip. Mr. and Mrs. Cross never traveled as they had planned, yet the titles to the properties remained in the names of Mr. and Mrs. Cross and Williams as joint tenants.

After the death of Mrs. Cross, Mr. Cross paid Williams $12,000. In his answer to Williams' complaint, Cross stated that he paid this sum to Williams, believing that Williams had no interest in any of the properties. Cross testified that, at the time he gave the money to Williams, it never occurred to him that Williams claimed an interest in any of the real estate, and that although he and Mrs. Cross had previously agreed to give Williams half of their savings, he never intended to give Williams half of his savings and half of the real estate. Williams believed that this money was paid to him as partial settlement of his mother's estate.

Williams first argues that the trial court erred in awarding the Prairie property to Mr. Cross. He contends that Mr. Cross was fully informed of all matters relating to the purchase of the property and that the trial court's finding of constructive fraud is therefore erroneous. He also argues that, by reason of the 1969 conveyances, defendant agreed to give Williams an interest in the property.

First, we note that a trial court's finding may not be reversed on review unless it is against the manifest weight of the evidence. (*Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.) Reviewing courts are not free to reweigh the evidence, and only in cases where there are no probative facts to support the conclusion of the trial court does reversible error occur. *Glass v. Peitchel.*(1978), 63 Ill. App. 3d 57, 380 N.E.2d 420.
■■ Constructive fraud has been defined as a breach of a legal or equitable duty which the law declares fraudulent because of its tendency to deceive others, to violate public confidences, or to injure public interests. (*In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 378

N.E.2d 1345; *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 344 N.E.2d 540.) It is often equated with a breach or abuse of a confidential or fiduciary relationship. *In re Estate of Neprozatis.*

In *Edwards v. Miller* (1978), 61 Ill. App. 3d 1023, 1027, 378 N.E.2d 583, 586, the court, in describing evidence which indicates the existence of a confidential relationship, stated:

"Normally, proof of a confidential or fiduciary relationship requires a showing that one person has reposed trust and confidence in another who thereby gains a resulting influence or superiority over the other. (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678; *Bremer v. Bremer*, 411 Ill. 454, 104 N.E.2d 299.) Generally, this is accomplished by establishing facts showing an antecedent relationship which gives rise to trust and confidence reposed in another. (*Ray v. Winter*, 67 Ill. 2d 296, 367 N.E.2d 678.) Such a confidential relationship may be moral, social, domestic or even personal (*Lux v. Lelija*, 14 Ill. 2d 540, 152 N.E.2d 853; *Rapp v. Bowers*, 38 Ill. App. 3d 668, 348 N.E.2d 529). * * * Relevant facts to be considered include the degree of kinship, as well as disparity in age and business experience, and the extent to which the allegedly servient party entrusts the handling of his or her business and financial affairs to the other. *Whewell v. Cox; McCartney v. McCartney*, 8 Ill. 2d 494, 134 N.E.2d 789; *Wold v. Wold.*"

▪▮ We find sufficient evidence in the record indicating the existence of a fiduciary relationship between Mr. Cross and his wife and a subsequent abuse of that relationship which supports the trial court's finding of constructive fraud.

Mrs. Cross managed all of the financial matters which arose during her marriage to Cornelius Cross. Mr. Cross pooled his wages with those of his wife and she, in turn, determined the manner in which the money would be spent. The evidence shows that he was an obedient husband who acted in accordance with his wife's wishes.

We also find, contrary to Williams' contention, that Mrs. Cross did not treat her husband fairly with respect to the acquisition of the Prairie property. By instructing the vendors of the property to deed the property to only herself and Williams, she betrayed the confidences of her husband. Mr. Cross did not know that his name was not on the deed and believed that Williams secured the mortgage so that he and his wife could purchase the property. Mr. and Mrs. Cross paid the mortgage, insurance and taxes on the Prairie property without contribution from Williams. Mr. Cross resided at the Prairie property from the time it was purchased, believing that he was an owner.

While Mr. Cross consented to making Williams a joint tenant in the three parcels of realty in 1969, he did so only at the direction of his wife.

The evidence shows that Mrs. Cross initiated the 1969 conveyances and told her husband that the properties would be later reconveyed. In other words, Mrs. Cross used her superiority and influence over her husband to persuade him to act according to her wishes. Therefore, we cannot agree that the 1969 conveyances manifest an intent on the part of Mr. Cross to allow Williams to have an interest in the property.

In the light of the above, we find that the trial court's judgment awarding the Prairie property to Cornelius Cross was proper.

Williams secondly cites as error that portion of the trial court's judgment ordering him to return the $12,000. He states that because Cross failed to allege any wrongdoing by the plaintiff and failed to specifically pray for the return of the money, the trial court erred in allowing Cross' recovery of the sum.

Section 34 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 34) provides, in part:

> "Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought this court shall, * * * protect the adverse party against prejudice by reason of surprise."

Here, Mr. Cross alleged that he paid the money to Williams believing that Williams claimed no interest in the real estate in question. Although he did not specifically request the return of the money, he prayed for "such other and further relief as the court deemed equitable." We believe that these facts, coupled with the court's statement during the cross-examination of Williams that the money was possibly being held in constructive trust, reasonably informed Williams that Mr. Cross was questioning the validity of the transfer.

■■ Moreover, mistake, fraud, and accident are well-established grounds for relief. (*Broodeen v. Gustus* (1960), 24 Ill. App. 2d 334, 164 N.E.2d 288.) Here, Mr. Cross, believing that his wife had reconveyed the properties, agreed to give Williams $12,000 after his wife's death. In the words of the trial court, Cross "believe[d] in his wife even in death" and paid the money to Williams in keeping with his promises made to her before her death. We therefore find that the trial court's judgment ordering Williams to return the money was proper.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.