EXECUTIVE COMMERCIAL SERVICES, LTD., Plaintiff-Appellant, v. VAPOR CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 83—556

Opinion filed June 27, 1985.—Rehearing denied August 5, 1985.

Joseph B. Platt, of Glenview, for appellant.

Fern C. Bomchill and Janet L. Reed, both of Mayer, Brown & Platt, of Chicago, for appellees.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Executive Commercial Services, Ltd. (ECS), appeals an order of the trial court granting summary judgment in favor of defendants, Vapor Corporation (Vapor) and Raymond Control Systems, Inc. At issue is whether the grant of summary judgment was proper.

We reverse and remand.

Plaintiff, an Illinois corporation, is in the business of providing financing for the purchase of industrial machines. Raymond Control Systems, a Delaware corporation doing business in Illinois, manufactures automatic pneumatic valves. Frank Raymond was its major

shareholder and president. In November 1976, Raymond Control Systems was acquired by Vapor and since then it has operated as a division of Vapor.

In the summer of 1976, Raymond and Janos Szombathy, the manufacturing manager at Raymond Control Systems, requested financing for the purchase of machinery for their new business, Century N-C Limited. This business would supply parts to Raymond Control Systems. ECS provided financing for Century's "purchase" of approximately 24 pieces of equipment by means of 51 financing agreements (leases), which are the subject of this appeal. The leases were executed in September and October 1976 and were guaranteed by Raymond Control Systems. Vapor is not a guarantor of the leases. The leases obliged Century to make monthly payments over approximately five years. In June 1977, Century defaulted on its monthly payments. Raymond had lost control of Raymond Control Systems when it was acquired by Vapor, and Century no longer received orders from Raymond Control Systems, its principal customer.

In August 1977, ECS repossessed the machinery and sold it to a new company, K. Marosa, to be operated by Szombathy who had previously operated Century. The new company operated from the same location as Century and with the same machinery. The leases for Marosa were guaranteed by Xavier Kaufman, the president of Astral Precision Equipment Company; this company had "sold" most of the machinery financed by ECS to Century. According to Szombathy, Marosa took over the operations of Century, which ceased doing business. Because of the refinancing, the monthly payments by Marosa were less than those of Century. It is undisputed that defendant Raymond Control Systems received no notice of the sale to Marosa.

On November 15, 1977, ECS filed a complaint alleging that in October 1976, it entered into a contract with Century whereby ECS agreed to purchase for and on behalf of Century certain machine tool equipment and agreed to lease it back to Century. Century failed to make rental payments on the 51 leases; it went out of business and abandoned the machinery to plaintiff, leaving a deficiency of $788,088.76. Plaintiff alleged that Raymond Control Systems guaranteed the payments due under the leases.

Defendants' first motion for summary judgment was denied. On October 18, 1982, ECS filed its first amended complaint asking for judgment of $720,336.69 and $78,986.81 in count I and $80,143.15 in count II. Defendants' second motion for summary judgment was granted and the cause was dismissed with prejudice on February 10, 1983. Plaintiff appeals.

■■ At the time the trial court granted summary judgment to defendants, there was a conflict within our appellate court as to whether a secured creditor who failed to give notice to the debtor or guarantor of the sale of collateral was barred from recovering a deficiency from the debtor or guarantor. Under the "absolute bar" view, a secured creditor is precluded from bringing a deficiency action against the debtor unless the debtor was given notice of the proposed sale of the collateral. (*State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 383, 438 N.E.2d 1345, 1350.) Under the "rebuttable presumption" or "remedial" view, if the collateral is sold without notice to the debtor or guarantor, the presumption is that the value of the collateral sold was equal to the indebtedness. The presumption can be rebutted by a showing by the creditor that the value of the collateral was less than the indebtedness and that the sale was commercially reasonable. (*National Boulevard Bank v. Jackson* (1981), 92 Ill. App. 3d 928, 930, 416 N.E.2d 358, 360-61.) In *First Galesburg National Bank & Trust Co. v. Joannides* (1984), 103 Ill. 2d 294, 469 N.E.2d 180, our supreme court resolved the conflict in favor of the rebuttable presumption approach. In the instant case, the trial court followed the absolute-bar rule in giving judgment for defendants. At issue here is whether that judgment must be reversed under the rebuttable presumption rule.

■■ The right of a secured party to dispose of collateral after default is provided under section 9—504 of the Uniform Commercial Code (UCC). (Ill. Rev. Stat. 1975, ch. 26, par. 9—504.) After default, a secured party "may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing." (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(1).) The sale must be commercially reasonable and reasonable notice of the sale shall be sent by the secured party to the debtor. (Ill. Rev. Stat. 1975, ch. 26, par. 9—504(3).) The secured party must account to the debtor for any surplus and the debtor is liable for any deficiency. Ill. Rev. Stat. 1975, ch. 26, par. 9—504(2).

After examining section 9—504 of the UCC, our supreme court in *First Galesburg National Bank & Trust Co.* (1984), 103 Ill. 2d 294, 299, 469 N.E.2d 180, stated that nowhere in the sections of the UCC concerning debtor defaults is it provided that a lack of notice bars a deficiency judgment. Any loss arising from a lack of notice gives rise to a right to recover from the loss under section 9—507 of the UCC. (103 Ill. 2d 294, 300, 469 N.E.2d 180.) The supreme court concluded that no basis for an absolute bar principle is found anywhere in article 9. 103 Ill. 2d 294, 300, 469 N.E.2d 180.

The court stated further that the absolute bar rule arbitrarily penalizes a creditor and provides a windfall for the debtor. If the sale of collateral was commercially reasonable, the debtors have suffered no loss or damage and should not be released from liability for any deficiency. The rebuttable presumption rule is fairer. If a creditor fails to give notice, the presumption is raised that the value of the collateral is equal to the indebtedness. If the creditor rebuts this presumption and shows, too, that the sale was commercially reasonable, he may maintain an action against the debtor or guarantor for any deficiency. The burden of showing commercial reasonableness is an adequate deterrent to an improper sale on the part of the creditor. (*First Galesburg National Bank & Trust Co.* (1984), 103 Ill. 2d 294, 300-01, 469 N.E.2d 180.) Our supreme court held that the rebuttable presumption standard should be applied in determining the consequence of a failure of notice to a debtor or guarantor. 103 Ill. 2d 294, 301, 469 N.E.2d 180.

In its supplemental brief, defendants argue that the trial court's grant of summary judgment in their favor should be affirmed. They distinguish *First Galesburg* from the instant case. In *First Galesburg,* the court was concerned about penal damages. The lack of notice to the guarantors was little more than a technical defect with minimal impact on the disposition of the collateral. Defendants claim that in the instant case lack of notice denied them the opportunity to monitor the sale, assess the value of the collateral, and identify the specific items covered by the leases. Application of the rebuttable presumption approach would provide a windfall to ECS.

Next, defendants argue that ECS cannot prove that the sale was commercially reasonable. ECS failed to comply with any of the safeguards courts have viewed as indicative of a commercially reasonable sale. ECS failed to notify defendants of the sale; it did not appraise the equipment prior to sale; it did not advertise or solicit bids; it did not display the equipment in an area where prospective purchasers were likely to see it. Defendants claimed plaintiff conducted a "sham" sale that would reduce Szombathy's monthly payments while reserving ECS' right to collect the balance from the guarantors. Defendants cite numerous cases illustrative of commercially unreasonable sales.

Finally, defendants argue that ECS cannot rebut the presumption that the value of the collateral sold was equal to the amount of the debt. Defendants claim that no expert could give a credible or admissible opinion as to the value of the equipment at the time of sale because ECS had no inventory or independent appraisal of the collateral and its condition at the time of the sale in 1977 cannot be determined now.

Defendants filed motions for summary judgment based on plaintiff's original and amended complaints. The issue of the commercial reasonableness of the sale was discussed in memoranda submitted by the parties. However, the trial court made no finding with respect to that issue. It dismissed plaintiff's complaint based on the absolute bar rule articulated in the then recently published first district case, *State National Bank v. Northwest Dodge, Inc.* (1982), 108 Ill. App. 3d 376, 438 N.E.2d 1345. In our opinion, the instant case must be reversed and remanded for a determination of whether the sale was commercially reasonable. It is inappropriate for this court to determine that issue. We hold that the trial court erred in granting summary judgment to defendants.

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.