HERITAGE STANDARD BANK AND TRUST COMPANY, Plaintiff-Appellant and Cross-Appellee v. HERITAGE STANDARD BANK AND TRUST COMPANY, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 85—0521

Opinion filed October 28, 1986.—Rehearing denied November 26, 1986.

564

Eugene G. Callahan and Matthew W. La Koma, both of Callahan, Fitzpatrick, Hirst & La Koma, of Oak Brook, and Francis D. Morrissey, Thomas F. Bridgman, George H. Olsen, and Michael A. Pollard, all of Baker & McKenzie, of Chicago, for appellant.

Mark R. Valley and Robert D. Boyle, both of Murphy & Boyle, Chartered, of Chicago, for appellees.

JUSTICE SCHNAKE delivered the opinion of the court:

Plaintiff, Heritage Standard Bank and Trust Company (the bank), sought entry of a deficiency judgment against defendants, David and Mary Callaghan, following the foreclosure and sale of the beneficial interest in a certain land trust which the Callaghans had assigned to the bank as collateral for a promissory note. The trial court refused to grant a deficiency judgment, and the bank appeals.

On June 8, 1983, plaintiff filed a "Complaint in Chancery to Foreclose Security Interest." The complaint alleged in pertinent part that: (1) David and Mary Callaghan had become indebted to the bank in the sum of $700,000 and the indebtedness was evidenced by a promissory note; (2) the collateral securing the note consisted of the assignment to the bank of the Callaghans' beneficial interest in a certain land trust; (3) the Callaghans failed to satisfy the indebtedness; and (4) there remained due the bank the principal balance of $567,698.95 together with accrued interest in the present amount of $215,691.49. The complaint prayed, *inter alia,* for foreclosure of the security interest; for judicial sale of the security interest; and for "such further relief as the court deems fitting and proper under the circumstances."

In their answer the Callaghans denied they had failed to satisfy their indebtedness and stated that no balance remained due and owing to the bank for reasons set forth in the annexed counterclaim. The counterclaim alleged that the interest rates charged the Callaghans were excessive and the product of deceptive practices.

Thereafter, the bank filed a motion for summary judgment on the complaint and counterclaim. The bank asserted that the Callaghans had defaulted on their promissory note and a principal balance in the amount of $379,698.95 together with interest and penalty in the amount of $288,438.17 remained due. Regarding the counterclaim, the bank denied any wrongdoing in setting the interest rates. An affidavit of a vice-president of the bank supporting this contention was attached to the motion.

The Callaghans filed a memorandum in opposition to the summary judgment motion and attached an affidavit of David Callaghan. In the affidavit Callaghan asserted that on information and belief the rate of interest charged was set arbitrarily and, had the bank charged interest in accordance with their agreement, sufficient interest would have been paid to the bank to avoid any claim of interest deficiency.

The trial court granted the motion for summary judgment on the

complaint and denied the motion for summary judgment on the counterclaim.

On September 27, 1984, a decree of foreclosure and sale submitted by the bank was entered. The decree stated that $721,703 was the amount due the bank. Additionally, the decree provided that, should the sale fail to procure sufficient funds to satisfy the debt, the sheriff shall specify the deficiency in his report and the deficiency shall stand as a lien.

Thereafter, the court granted the bank's motion for reconsideration of the denial of summary judgment on the counterclaim and entered summary judgment in favor of the bank. The Callaghans' motion for reconsideration was denied. In its judgment the court found that there was no reason for delay in enforcement or appeal. The Callaghans failed to file a timely notice of appeal, and, as a result, this court dismissed the Callaghans' cross-appeal seeking review of the trial court's ruling on the counterclaim.

On February 26, 1985, the bank filed a motion for enforcement of the foreclosure decree, and the Callaghans filed a motion to stay the sheriff's sale or, in the alternative, to modify the decree of foreclosure. The latter motion asserted that the bank was prohibited from bidding on the property and requested confirmation that the decree did not grant the bank a money judgment against the defendants. No order of record was entered addressing the Callaghans' motion. However, the court did file an order assigning the Callaghans' beneficial interest in the land trust to the sheriff of Du Page County.

On March 14, 1985, a judicial sale of the properties involved yielded a high bid of $221,000 from the bank. The sheriff's report of sale and distribution, filed with the court on March 27, 1985, noted the bank's bid and reported a deficiency of $292,404.70. The report recommended that a deficiency judgment in that amount be entered in favor of the bank.

In their response to the sheriff's report, the Callaghans asserted the following: (1) because the bank had not prayed for a deficiency judgment, none should be entered; (2) the bank's $221,000 bid did not represent the fair market value of the property; (3) the bank purposely delayed in proceeding with the foreclosure action in order to take advantage of its ability to charge exorbitant interest rates; (4) the substantial amounts repaid by defendants did not entitle the bank to a deficiency judgment; and (5) defendants disputed the amount owed, thereby precluding a deficiency judgment.

The bank countered the Callaghans' first argument by referring to the paragraph in the judgment outlining the amounts due on the

note and security and to the paragraph stating that any deficiency shall remain as a lien against the defendants. As to the Callaghans' second argument, the bank asserted that their bid represented the fair market value and in support appended written appraisals of the subject property. The bank responded to the third argument stating that the defendants had sought delays in the bringing of the foreclosure proceedings. Regarding the last two arguments, the bank asserted that the Callaghans had failed to contradict the amounts due.

At the hearing on the objections to the sheriff's report, the Callaghans conceded that they were not challenging the sale itself, but rather were attacking the amount bid and the entry of a deficiency judgment based on that bid. After argument the court denied entry of a deficiency judgment based on the failure of the complaint to specifically request a deficiency judgment; the fact that the bank purchased the property; and equitable considerations relative to the amounts recovered by the bank.

On appeal the bank argues that the trial court's denial of a deficiency judgment in the proceeding below was erroneous because the complaint included a general-prayer-for-relief clause, the bank acted properly in bidding on the property, and the amounts recovered had no bearing on the entry of a deficiency judgment.

■ Before addressing the arguments of the parties, a brief contextual background is necessary. The security interest foreclosed below was a beneficial interest in a land trust, which in Illinois is treated as personal property and recognized as a general intangible under article 9 of the Uniform Commercial Code as enacted in Illinois. (Ill. Ann. Stat., ch. 26, par. 9—106, Illinois Code Comment, at 70 (Smith-Hurd 1974).) Section 9—504(2) of the Code outlines the debtor's liability in the event of a deficiency following a foreclosure sale as follows:

> "If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency." (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(2).)

The defenses available to a debtor, absent an agreement that the debtor is not liable to the creditor for any deficiency, are lack of reasonable notice of the sale and commercial unreasonableness of the sale. (Ill. Rev. Stat. 1983,ch. 26, par. 9—504(3); *First National Bank v. Wolfe* (1985), 137 Ill. App. 3d 929, 485 N.E.2d 46; *Ford Motor Credit Co. v. Jackson* (1984), 126 Ill. App. 3d 124, 466 N.E. 2d 1330.) Here there was no agreement absolving the debtor of liability for any deficiency. Consequently, under the Code the Callaghans were liable

for any deficiency resulting from the foreclosure sale, presuming that adequate notice was given and the sale was commercially reasonable. Against this backdrop, we proceed to the arguments raised on appeal.

■ The bank first contends that the trial court erred in denying a deficiency judgment on the basis of the pleadings. The bank asserts that the general prayer for relief included in the complaint was sufficient to warrant the entry of a deficiency judgment and, in addition, the Callaghans were not unduly surprised by the recommendation for a deficiency judgment contained in the sheriff's report of sale and distribution.

Section 2—604 of the Code of Civil Procedure addresses prayers for relief and states in pertinent part:

> "Except in case of default, the prayer for relief does not limit the relief obtainable, but where other relief is sought the court shall, by proper orders, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." (Ill. Rev. Stat. 1983, ch. 110 par. 2—604.)

It is well established that a prayer for general relief is sufficient to authorize any judgment warranted by the facts alleged in the pleadings. (*Wrlla v. Wrlla* (1930), 342 Ill. 173 N.E. 768; *Williams v. Estate of Cross* (1980), 85 Ill. App. 3d 923, 407 N.E.2d 704.) Here the complaint alleged that the Callaghans had defaulted on their promissory note and were indebted to the bank for an amount in excess of $700,000. We believe these allegations were sufficient to authorize entry of a deficiency judgment in favor of the bank, although we fully recognize that the sounder practice by far would have been for the bank to pray for a money judgment in the event of a deficiency.

■ Furthermore, the Callaghans do not appear to have suffered any prejudice by reason of surprise as a result of the bank's failure to specifically request a deficiency judgment. As stated, the Uniform Commercial Code as enacted in Illinois provides that the debtor is liable for any deficiency. (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(2).) In addition, the promissory note signed by the Callaghans specifically stated that "in the event of a deficiency, the Undersigned agree to pay the same to the bank on demand." The Callaghans' lack of surprise regarding their potential liability for a deficiency judgment is further evidenced by their motion filed prior to the foreclosure sale requesting confirmation from the court that the decree of foreclosure did not grant the bank a money judgment. The Callaghans' clear recognition of their potential liabilities coupled with the complete lack of evidence or comment supporting their claim of unfair surprise precluded the trial court from denying a deficiency judgment on grounds

of prejudice resulting from the pleadings.

Our holding finds further support by analogy to the pertinent case law involving mortgage foreclosures. See *Eiger v. Hunt* (1935), 282 Ill. App. 399 (complainants were entitled to a decree for the amount of the deficiency found to be due after the sale of the mortgaged premises despite not having prayed for a deficiency decree against the defendant); *Townsend v. Wilson* (1910), 155 Ill. App. 303 (court found Wilson was entitled to a judgment against Townsend for the amount of the deficit because Wilson had a right to sue at law and obtain a judgment for the whole debt at the same time he began his foreclosure suit; the court stated, "[W]e see no reason why he could not take a judgment for the deficit in chancery court immediately after the deficit is known after sale" (155 Ill. App. 303, 309).

■ The bank next contends that the trial court erroneously applied *Home Federal Savings & Loan Association v. Zarkin* (1982), 89 Ill. 2d 232, 432 N.E.2d 841, to the instant case. In *Zarkin* our supreme court held that an Illinois land trustee who also serves as a secured creditor breaches its fiduciary duty of loyalty to the beneficiary when it purchases trust property following foreclosure. The *Zarkin* decision was superseded by Public Act 82—891, "An Act in relation to land trusts and the power and authority of trustees of land trusts to deal with trust property," which was approved and became effective on August 6, 1982 (Ill. Rev. Stat. 1983, ch. 148, pars. 81 through 84). Section 2 of the Act specifically authorized the transaction at issue here, providing in pertinent part:

"If a debt is secured by a security interest in a beneficial interest in a land trust or by a mortgage on land trust property, neither the validity or enforceability of the debt, security interest or mortgage nor the rights, remedies, powers and duties of the creditor with respect to the debt or the security shall be affected by the fact that the creditor and the trustee are the same person, and the creditor may extend credit, obtain such security interest or mortgage, and acquire and deal with the property comprising the security as though the creditor were not the trustee." (Ill. Rev. Stat. 1983, ch. 148, par. 82.)

Section 4 provides that the Act "applies to all security interests in a beneficial interest in land trusts *** and to all debts secured thereby, whether arising before, on, or after the effective date of the Act." Ill. Rev. Stat. 1983, ch. 148, par. 84; *Sanelli v. Glenview State Bank* (1985), 108 Ill. 2d 1, 483 N.E.2d 226.

The sale of the security interest in the instant case occurred on March 14, 1985. Under the law in effect at that time, the bank did

not breach its fiduciary duty to the Callaghans when it purchased the trust property. Therefore, the trial court's reliance on *Zarkin* as support for its ruling denying a deficiency judgment was erroneous.

■ Finally, the bank contends that the trial court's ruling was erroneous to the extent the court relied on any equitable powers to consider the amount of money paid by the Callaghans to the bank. The record indicates that prior to foreclosure and sale, the Callaghans had paid the Bank amounts in excess of the principal. During argument, the court noted that one factor to be considered was the granting of a deficiency judgment to a party that on its face appears to have been made whole. In its findings, the court specifically referred to the actual recovery made by the bank as a reason for denying a deficiency judgment.

In *Metz v. Dionne* (1928), 250 Ill. App. 369, this court stated that "the right to a personal judgment [for a deficiency] in foreclosure proceedings does not rest on general equity principles but upon the legal obligation of the maker of the note." (250 Ill. App. 369, 373; *Bank of Benton v. Cogdill* (1983), 118 Ill. App. 3d 280, 454 N.E.2d 1120. But *cf. Collins v. Baim* (1939), 299 Ill. App. 405, 20 N.E.2d 298 (court had jurisdiction to determine any fact occurring after decree of foreclosure which would render deficiency decree inequitable).) Here, the court's consideration of the amounts recovered ignored the Callaghans' legal obligations as makers of the note and therefore fails to provide any basis for denying a deficiency judgment.

■ The Callaghans delivered a promissory note to the bank to secure their indebtedness for the loan. The note detailed the applicable interest rates, the maturity date of the note, and the collateral securing the note. The Callaghans' claim that the interest rates were excessive and the result of deceptive practices was rejected by the trial court, and an appeal from that ruling was not properly perfected in this court. As a result, the Callaghans were bound by the legal obligations of the note. The fact that the bank recovered amounts in excess of the principal has no bearing on the granting of a deficiency judgment because, despite these payments, the Callaghans failed to satisfy their indebtedness. Under these circumstances, the fact that the Callaghans made payments in excess of the principal clearly does not render a deficiency judgment inequitable.

In summary, we find that the grounds relied on by the trial court in denying a deficiency judgment failed to support the court's ruling and do not preclude the entry of a deficiency judgment.

Having determined that the grounds for the trial court's denial of a deficiency judgment were erroneous, it remains to be decided

whether the Callaghans' claim that the bank failed to bid the fair market value for the trust property affects the entry of a deficiency judgment. The bank bid $221,000 for the six lots remaining in the trust and submitted written appraisals supporting the bid. The Callaghans claimed the price bid by the bank was $50,000 below the fair market value, and the record indicates appraisals supporting this claim were submitted, although they do not appear in the record. The trial court recognized the Callaghans' claim but did not make a finding on the matter, despite approving the remaining aspects of the sale.

As stated at the outset, the creditor's right to a deficiency judgment may depend on whether the foreclosure sale was commercially reasonable. Whether a sale is commercially reasonable is a question for the trier of fact. (*Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 400 N.E.2d 1057.) The key component in assessing commercial reasonableness is, of course, the sale price.

The absence of a finding by the trial court on the sufficiency of the price precludes its approval of the remaining aspects of the sale from being a conclusive finding of commercial reasonableness. Because the entry of a deficiency judgment and the amount of that judgment depend on a determination of commercial reasonableness by the trial court, this cause must be remanded for an evidentiary hearing on the propriety of the amount bid by the bank at the foreclosure sale. *Executive Commercial Services, Ltd. v. Vapor Corp.* (1985), 134 Ill. App. 3d 558, 481 N.E.2d 16.

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOPF and UNVERZAGT, JJ., concur.