STANDARD BANK AND TRUST COMPANY, Plaintiff-Appellant, v. DAVID G. CALLAGHAN *et al.,* Defendants-Appellees.

Second District   No. 2—90—0507

Opinion filed May 30, 1991.—Rehearing denied July 4, 1991.

Francis D. Morrissey, Thomas F. Bridgman, Michael A. Pollard, and Kathleen F. MacLennan, all of Baker & McKenzie, of Chicago, Eugene G. Callahan and Matthew W. LaKoma, both of Callahan, Fitzpatrick & La-Koma, of Oak Brook, and R. Terrence Kalina, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

Jay L. Statland, Mark R. Valley, James P. Boyle, and Robert D. Boyle, all of Murphy & Boyle, Chartered, of Chicago, and Robert C. Liston, of Liston & Mauter, P.C., of Wheaton, for appellees.

JUSTICE DUNN delivered the opinion of the court:

Plaintiff, Standard Bank and Trust Company (the Bank), appeals from an order of the circuit court of Du Page County awarding a $242,404.70 deficiency judgment against defendants, David and Mary Callaghan (the Callaghans), but denying the Bank interest and attorney fees accruing after entry of a foreclosure decree in 1984. The following issues are presented on appeal: (1) whether the Bank should have been awarded statutory post-judgment interest from the date of the sheriff's sale; (2) whether the doctrine of merger prevented the Bank from seeking additional attorney fees pursuant to the promissory note executed by the Callaghans; (3) whether allegedly unreasonable conduct by the Bank justified denial of the additional attorney fees; and (4) whether the Bank was precluded from seeking some of the fees in question because it failed to appeal from a portion of a 1988 order providing that each party would pay its own fees and costs. We affirm in part, reverse in part, and remand.

Although it is somewhat painstaking, a discussion of the history and background of this case is necessary for a resolution of the issues presented here. In July 1980, the Callaghans borrowed $700,000 from the Bank, then known as Heritage Standard Bank and Trust Company, and executed a note for repayment of the amount plus interest. The note stated that, in the event of default, the Callaghans would pay the reasonable attorney fees incurred by the Bank in enforcing the terms of the note. The note also stated that the beneficial interest in a certain land trust which was held by the Callaghans would serve as security for payment of the note. The Callaghans had previously executed an assignment of the beneficial interest in the land trust in favor of the Bank.

The Callaghans subsequently defaulted on the note. On January 8, 1983, the Bank filed a complaint to foreclose its security interest in the beneficial interest in the land trust. The Callaghans filed a counterclaim. The trial court granted the Bank summary judgment on both the complaint and counterclaim. The foreclosure decree, which was entered on September 27, 1984, states that it is ordered that defendants pay plaintiff the sum of $721,073.16 within three days with a post-judgment interest rate of 9% per annum. The decree further states that the sheriff of Du Page County will conduct a judicial sale of the beneficial interest and, if the amount derived from the sale was not sufficient to satisfy the judgment amount, the sheriff was to specify the deficiency amount in his report of sale. The above judgment amount included $7,760.50 in attorney fees incurred up until that point.

The sheriff's sale was held on March 14, 1985. The beneficial interest in the land trust was sold to the Bank, which bid $221,000. In the sheriff's report of sale concerning the land trust, the sheriff recommended that a deficiency judgment be entered in favor of the Bank in the amount of $292,404.70, of which $13,023.36 constituted attorney fees.

On June 3, 1985, however, the circuit court entered an order denying the Bank any deficiency judgment. The court's ruling was based upon the Bank's failure to specifically request a deficiency judgment in the complaint for foreclosure and equitable concerns. The Bank appealed from this order, and this court reversed it in *Heritage Standard Bank & Trust Co. v. Heritage Standard Bank & Trust Co.* (1986), 149 Ill. App. 3d 563 (*Standard Bank I*). This court held that the general prayer for relief in the foreclosure complaint was sufficient to authorize entry of a deficiency judgment and rejected certain equitable arguments raised by defendants. (*Standard Bank*, 149 Ill. App. 3d at 568-70.) It remanded the cause to the circuit court for a hearing concerning defendants' contention that the sale was commercially unreasonable. 149 Ill. App. 3d at 570-71.

Upon remand, the trial court conducted such a hearing and determined that the fair-market value of the property was $50,000 greater than the amount bid by the Bank, $221,000. The trial court determined that the amount bid was commercially unreasonable and that the Bank engaged in a mistaken practice by relying on an appraiser's report in making the bid when it should have known the appraisal was erroneous. On February 29, 1988, the court entered an order denying the deficiency judgment once again on the above grounds. The order further stated that each side would pay its own costs and attorney fees.

The Bank appealed the above order to this court, which affirmed in part and reversed in part in *Standard Bank & Trust Co. v. Callaghan* (1988), 177 Ill. App. 3d 973 (*Standard Bank II*). This court held that the trial court's finding that the sheriff's sale was commercially unreasonable because of the Bank's mistaken practice was not against the manifest weight of the evidence (*Standard Bank*, 177 Ill. App. 3d at 979) but that the trial court erred in concluding that this constituted an absolute bar to a deficiency judgment (177 Ill. App. 3d at 982). We remanded the case to the trial court with instructions to award a judgment to the Bank in the amount of $50,000 less than the deficiency. 177 Ill. App. 3d at 982.

Upon remand, the parties agreed that, under *Standard Bank II*, the Bank was entitled to a judgment in the amount of at least $242,404.70, representing the $292,404.70 deficiency noted in the sheriff's report of sale minus $50,000. The Bank asserted that it was also entitled to attorney fees incurred in the litigation since March 14, 1985, the date of the sheriff's sale, plus statutory post-judgment interest of 9% for that time period pursuant to section 2—1303 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—1303). The trial court ruled that the Bank was not entitled to post-judgment interest under section 2—1303 because in a foreclosure action, the deficiency judgment rather than the foreclosure decree determines defendants' personal liability. The trial court also ruled that the Bank was not entitled to additional attorney fees because its commercially unreasonable conduct had caused the continuing litigation and because the Bank never appealed from the portion of the February 29, 1988, order assessing each side its own costs and fees. The court entered a deficiency judgment in the amount of $242,404.70 on April 5, 1990. The Bank now appeals.

Section 2—1303 of the Code of Civil Procedure states that "[j]udgments recovered in any court shall draw interest at the rate of 9% per annum from the date of the judgment." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1303.) The Bank argues that under this provision it was entitled to 9% interest per annum on the judgment order in the foreclosure decree which stated that defendants shall pay plaintiff the sum of $721,073.16 within three days plus post-judgment interest at a rate of 9%. The Bank also maintains that, since the Callaghans did not appeal from the foreclosure decree, they are bound to pay 9% interest per annum from the date of the decree under the law-of-the-case doctrine.

At the time the foreclosure decree was entered, section 6 of "An Act relating to mortgages of property of public utilities" (Act) provided in part as follows:

"[I]n all actions directing foreclosure of mortgages, a judgment may be rendered for any balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales, and enforcement may be had for the collection of such balance, the same as when the judgment is solely for the payment of money. Such judgment may be rendered conditionally, at the time of ordering the foreclosure, or it may be rendered after the sale and the ascertainment of the balance due." Ill. Rev. Stat. 1983, ch. 95, par. 56.

■■ Our supreme court has consistently held that while this statute did authorize conditional deficiency decrees at the time the judgment of foreclosure was entered, such a decree would only have the effect of a finding that the plaintiff was entitled to a personal judgment for the balance remaining due after the application of the sale proceeds. (*State Bank v. Burr* (1940), 375 Ill. 379, 382-83; *Eggleston v. Morrison* (1900), 185 Ill. 577, 579; *Cotes v. Bennett* (1899), 183 Ill. 82, 86.) Conditional judgments under this provision were not considered personal judgments against the defendants. (*Burr*, 375 Ill. at 383; *Cotes*, 183 Ill. at 86.) Thus, provisions in a foreclosure decree such as the provision in the present case directing payment by defendants of a particular sum within a certain time period did not render defendants personally liable for the sum in question but instead were to be interpreted as alternative decrees allowing the foreclosure sale to be avoided by payment of the specified sum within that period. *Bumgartner v. Hall* (1896), 163 Ill. 136, 138; *Kirby v. Runals* (1892), 140 Ill. 289, 298.

■■ Under the above holdings the provision of the foreclosure decree stating that defendants shall pay $721,073.16 within three days at 9% interest did not render the Callaghans personally liable for payment of this amount. Instead, it merely amounted to a declaration that payment of that sum was necessary to avoid a sale of the property. Since there was no personal judgment entered against the Callaghans until the April 5, 1990, deficiency judgment was entered, the trial court properly denied the Bank's claim for statutory post-judgment interest.

■■ For the first time in its reply brief, the Bank argues that, if it was not entitled to an award of statutory post-judgment interest for the period between the sheriff's sale and the entry of the deficiency judgment, then it was entitled to an award of interest in accord with the terms of the note for that period, at its prime lending rate plus 3%. The Bank never raised this issue in the trial court, and it is therefore waived for purposes of appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500.) The issue is also waived because it was not raised in the Bank's initial brief (134 Ill. 2d R. 341(e)(7); *Calabrese v.*

*State Farm Mutual Automobile Insurance Co.* (1989), 187 Ill. App. 3d 349, 354) and, accordingly, we will not consider it.

We will now consider whether the trial court was correct in ruling that the Bank was not entitled to an award of attorney fees. The Callaghans contend that the Bank was precluded from recovering additional attorney fees after the foreclosure judgment was entered in September 1984 because the note executed by the Callaghans in 1980 merged into the judgment. The Callaghans cite *Doerr v. Schmitt* (1941), 375 Ill. 470, in which the court concluded that certain bonds secured by the trust deed merged into the judgment. (*Doerr,* 375 Ill. at 473.) While *Doerr* was a foreclosure action, a deficiency judgment had been entered in that case at the relevant time. Here, by contrast, the Callaghans assert that the note merged into the September 1984 judgment of foreclosure.

■ This contention is untenable. Applying the doctrine of merger at the time a foreclosure decree is entered would bar any further recovery on the underlying notes. This would be contrary to section 6 of the old Act (Ill. Rev. Stat. 1983, ch. 95, par. 56), and section 15—1508(e) of the current Illinois Mortgage Foreclosure Law (Ill. Rev. Stat. 1989, ch. 110, par. 15—1508(e)), which clearly authorize the entry of deficiency judgments after the entry of foreclosure decrees. We reject the Callaghans' merger argument.

■ The Callaghans also contend that the Bank was precluded from recovering additional attorney fees because in its February 29, 1988, order denying the Bank a deficiency judgment, the trial court also provided that each side would pay its own costs and fees. According to the Callaghans, the Bank never appealed from this portion of the order, and it was therefore barred from seeking the additional fees. The trial court agreed with this contention.

The Bank's notice of appeal for *Standard Bank II* states that it appeals from the trial court's ruling "that the price bid by the [Bank] at the Sheriff's Sale was not commercially reasonable and denying a deficiency judgment be reversed." According to the Callaghans, since the notice of appeal did not specify the portion of the order regarding costs and fees, the Bank did not appeal from this portion of the order and remained bound by it, prohibiting the Bank from seeking additional attorney fees.

We disagree with this assertion. Section 6 of the old Act is captioned "Deficiency judgment—Enforcement" and authorized entry of judgment "for *any* balance of money that may be found due to the plaintiff, over and above the proceeds of the sale or sales." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 95, par. 56.) This language would indicate that a

deficiency judgment can include any amounts due to the plaintiff which would include attorney fees. In fact, the recommended deficiency judgment amount in the sheriff's report of sale included attorney fees.

Therefore we conclude that the Bank's notice of appeal, which sought reversal of the denial of a deficiency judgment, encompassed the denial of additional attorney fees as well. Additionally, this court's opinion in *Standard Bank II*, which reversed the February 29, 1988, order and remanded the cause for entry of judgment in the amount of the deficiency minus $50,000, authorized the trial court to consider additional attorney fees in calculating the deficiency amount. We therefore reject the Callaghans' argument.

■■■ The Callaghans also contend that the Bank cannot receive additional attorney fees because the trial court did not reserve jurisdiction to award such fees in the foreclosure decree, citing *Phillips v. O'Connell* (1947), 331 Ill. App. 511, 532-34. The Callaghans acknowledge that the foreclosure decree states "the cost of foreclosure, including attorneys' fees, are additional indebtedness for which the plaintiff should be reimbursed." They assert, however, that this was not intended to include additional fees incurred after the sheriff's sale. We disagree and conclude that this provision was intended to encompass all reasonable attorney fees resulting from the foreclosure proceedings, including fees incurred in seeking the deficiency judgment and for appeals. Accordingly, this contention must fail.

The trial court premised its denial of attorney fees in part upon its conclusion that the litigation after the sheriff's sale resulted from the Bank's mistaken practice in submitting a bid much lower than the value of the property. Although attorney fees are ordinarily not awarded to the prevailing litigant, if there is a contractual provision authorizing attorney fees, the trial court may enforce that provision at its discretion. (*Petkus v. St. Charles Savings & Loan Association* (1989), 182 Ill. App. 3d 327, 331.) Therefore, we must determine whether the denial of fees was an abuse of the trial court's discretion.

Following this court's opinion in *Standard Bank I*, the ensuing litigation focused almost exclusively on whether the Bank's conduct was commercially unreasonable and whether, if it was, this would operate as an absolute bar to a deficiency judgment. The trial court determined that the Bank's conduct was commercially unreasonable, and we held in *Standard Bank II* that this finding was not against the manifest weight of the evidence. (*Standard Bank*, 177 Ill. App. 3d at 979.) Since the promissory note only authorized the Bank to recover "reasonable attorney fees" incurred in enforcing the note, the trial court's ruling on attorney fees was clearly correct with regard to the period of time fol-

lowing our decision in *Standard Bank I.* In our view, attorney fees incurred primarily because of the necessity of resolving issues created by the Bank's misconduct are not "reasonable attorney fees" which the Callaghans should be forced to pay.

The same is not true, however, of the fees incurred between the time of the sheriff's sale and this court's decision in *Standard Bank I.* The primary issues resolved during this period were whether the general prayer for relief in the Bank's complaint was sufficient to authorize entry of a deficiency judgment, whether the Bank violated its fiduciary duty as land trustee by bidding on the property, and whether certain equitable considerations precluded entry of a deficiency judgment. This court ruled in the Bank's favor on each of these issues and then remanded the cause to the trial court for a hearing on whether the sheriff's sale was commercially reasonable. *Standard Bank,* 149 Ill. App. 3d at 571.

It is evident that the proceedings between the time of the sheriff's sale and our decision in *Standard Bank I* would have taken place regardless of whether the Bank had submitted the unreasonable bid at the sale. These proceedings, including the initial appeal, did not result from the Bank's misconduct. In light of our eventual holding in *Standard Bank II* that the Bank was entitled to a deficiency judgment, it was clearly reasonable for the Bank to assert its claim to such relief in the trial court and on appeal. While it would not be reasonable to allow the Bank an award of attorney fees for the period following our remand in *Standard Bank I* because the remaining issues to be resolved resulted from the Bank's misconduct, the trial court abused its discretion by failing, in accordance with the note's provisions, to award attorney fees for the period between the sheriff's sale and the resolution of *Standard Bank I.*

We, therefore, reverse this aspect of the trial court's order and remand the cause to the trial court for a hearing at which it shall determine a reasonable attorney fee for this period.

Affirmed in part; reversed in part and remanded.

REINHARD, P.J., and UNVERZAGT, J., concur.