STANDARD BANK & TRUST COMPANY, Plaintiff-Appellant, v. DAVID G. CALLAGHAN *et al.*, Defendants-Appellees.

Second District   No. 2—88—0232

Opinion filed December 29, 1988.

Eugene G. Callahan and Matthew W. La Koma, both of Callahan, Fitzpatrick & La Koma, of Oak Brook, Rathje, Woodward, Dyer & Burt, of

Wheaton, and Thomas F. Bridgman, Michael A. Pollard, and Kathleen F. MacLennan, all of Baker & McKenzie, of Chicago (Francis D. Morrissey, of counsel), for appellant.

Liston & Mauter, P.C., of Wheaton, and Mark R. Valley and Robert D. Boyle, both of Murphy & Boyle, Chartered, of Chicago (Jay L. Statland, of counsel), for appellees.

Harvey B. Stephens and Emmet A. Fairfield, both of Brown, Hay & Stephens, of Springfield, for *amicus curiae* Illinois Bankers Association.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Standard Bank & Trust Company (formerly Heritage Standard Bank & Trust Company), appeals from the trial court's order finding plaintiff's bid at a court-ordered property foreclosure sale to be commercially unreasonable and barring plaintiff from recovering a deficiency judgment entered against defendants, David G. Callaghan, Mary M. Callaghan, and other owners and non-record claimants. This is plaintiff's second appeal. In the first appeal, we reversed the trial court's order barring plaintiff from recovering a deficiency judgment for failing to properly specify such relief in its complaint and remanded the cause to the trial court "for an evidentiary hearing on the propriety of the amount bid by [plaintiff] at the foreclosure sale." (See *Heritage Standard Bank & Trust Co. v. Heritage Standard Bank & Trust Co.* (1986), 149 Ill. App. 3d 563, 571.) The instant appeal challenges the trial court's order following the evidentiary hearing conducted pursuant to our mandate. Plaintiff now contends that the trial court erred in concluding that its bid was not commercially reasonable and, in any event, barring plaintiff from recovering a deficiency judgment on that basis. We affirm in part, reverse in part, and remand.

On June 8, 1983, plaintiff filed a complaint to foreclose on a security interest in a land trust consisting of six lots in a residential subdivision. Plaintiff's complaint alleged that (1) defendants, David and Mary Callaghan, were indebted to plaintiff for approximately $700,000; (2) the note was secured by defendants' beneficial interest in the land trust; (3) defendants failed to satisfy the note; and (4) there remained due to plaintiff a principal balance of $567,698.95 together with accrued interest of $215,691.49. Defendants filed an answer and counterclaim. Thereafter, plaintiff moved for summary judgment on its complaint and defendants' counterclaim. The trial court granted plaintiff's motion for summary judgment on the complaint,

but denied its motion for summary judgment on the counterclaim. The trial court subsequently reconsidered its ruling and entered summary judgment in favor of plaintiff on defendants' counterclaim.

On September 27, 1984, the trial court entered a decree of foreclosure and sale. The decree ordered that defendants pay plaintiff the judgment amount, at that time determined to be $721,073.16, within three days, or the property securing the debt would be sold. The decree further stated that if the sale failed to satisfy the debt, the deficiency would stand as a lien. Defendants did not satisfy the judgment, and plaintiff sought enforcement of the decree of foreclosure and sale.

On March 14, 1985, the sheriff of Du Page County conducted a judicial sale of the property and received a bid of $221,000 from plaintiff. The sheriff's report of sale and distribution, filed with the court on March 27, 1985, noted plaintiff's bid and reported a deficiency of $292,404.70. The report recommended that a deficiency judgment in that amount be entered in plaintiff's favor. Defendants filed a response to the sheriff's report asserting that plaintiff was not entitled to the deficiency judgment on the basis that plaintiff's complaint did not request such relief and plaintiff's bid did not represent the fair market value of the property. On June 3, 1985, the trial court approved the report of sale and distribution, but denied plaintiff a deficiency judgment against defendants on the basis that plaintiff failed to request such a remedy in its prayer for relief.

On October 28, 1986, this court reversed the trial court's order barring the deficiency judgment on the basis of an inadequate prayer for relief and remanded the cause for an evidentiary hearing on the propriety of plaintiff's bid. *Heritage Standard Bank & Trust Co. v. Heritage Standard Bank & Trust Co.* (1986), 149 Ill. App. 3d 563, 571.

At the subsequent hearing conducted pursuant to our mandate, David Callaghan testified that he and his attorney were present at the judicial sale and objected to plaintiff's bid. The evidence established that plaintiff's bid was based on presale appraisals conducted on January 25, 1985, by Robert Gorman. To prepare the appraisals, Gorman testified that he went out and "looked at the property," drew conclusions as to the value, discussed his conclusions with an associate, Timothy Rice, and asked Rice to "gather data" for the purpose of determining the accuracy of his conclusions. Gorman's appraisals valued the property at $221,000. On cross-examination, Gorman indicated that he had previously conducted appraisals for plaintiff on the same lots in 1983. According to Gorman, the value of the property stated in the 1985 appraisals was identical to the value of the property stated

in the 1983 appraisals. Gorman further testified that Rice prepared the actual appraisals, and while Gorman's signature appeared on them, he could not remember reading them.

Defendants did not obtain a written appraisal prior to the judicial sale. Rather, Callaghan testified that the value of the property was $291,600 based on a price list and sales of lots in the subdivision encompassing the property. Defendants did order a formal appraisal by Charles Bruckner after the judicial sale. Bruckner stated that he appraised the property at $271,000. Bruckner testified that his appraisal was based on (1) personal inspection of the property; (2) review of available maps and plats; (3) review of the county records of the planned unit development encompassing the property; (4) use of market comparable sales; (5) verification that the comparable sales were arm's-length transactions; (6) inspection of each of the comparable sales used; and (7) review of defendants' price list. Bruckner further testified that his appraisal stated the value of the property as of April 1, 1985, approximately two weeks after the judicial sale.

On February 29, 1988, the trial court entered a written order denying plaintiff a deficiency judgment. The court expressly found defendants' appraiser more credible than plaintiff's appraiser and concluded that plaintiff did not conduct a thorough investigation for making its bid and that plaintiff's appraiser was just "going through the motions without any real substance behind his opinion." The court found that plaintiff's bid was $50,000 less than the fair market value of the property based on defendants' post-sale appraisal of $271,000, and stated:

> "[T]he price as bid was not commercially reasonable, and *** the [plaintiff] in making such a bid engaged in a 'mistaken practice,' *i.e.* relied upon an appraiser's report that it knew, or ought to have known was too low."

Plaintiff filed this timely appeal.

Plaintiff first contends that the trial court erred in finding that plaintiff's bid was not commercially reasonable. While plaintiff correctly contends that failure to bid an amount equal to or greater than fair market value does not by itself render a judicial sale commercially unreasonable, we believe that the trial court's decision that plaintiff's bid rendered the judicial sale commercially unreasonable was proper in light of its finding that plaintiff engaged in a "mistaken practice" in submitting its bid.

■ Article 9 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1983, ch. 26, par. 9—101 *et seq.*) governs the foreclosure of security interests and is applicable to the instant action. (See *Heritage*

*Standard Bank & Trust Co. v. Heritage Standard Bank & Trust Co.* (1986), 149 Ill. App. 3d 563, 567.) In the case of defaults, section 9—504(1)(b) of the Code provides that a secured party may sell the collateral securing a debt in order to satisfy the indebtedness. (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(1)(b).) Unless there is an agreement to the contrary, the debtor is liable for any deficiency that results from the sale. (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(2).) Absent such an agreement, the only defenses available to a debtor against a deficiency judgment are lack of reasonable notice of the sale and commercial unreasonableness of the sale. Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3); *Heritage Standard Bank & Trust Co.*, 149 Ill. App. 3d at 567.

■ Section 9—504(3) of the Code provides that "every aspect of the disposition including the method, manner, time, place and *terms* must be commercially reasonable." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 26, par. 9—504(3).) While price alone does not establish commercial reasonableness (see *Chicago City Bank & Trust Co. v. Wilson* (1980), 86 Ill. App. 3d 452, 456), this court has recently stated that price is the *key component* in assessing commercial reasonableness (*Heritage Standard Bank & Trust Co.*, 149 Ill. App. 3d at 571). In determining whether price is commercially reasonable, Illinois courts have long recognized that property does not bring its full value at forced sales. (*Horney v. Hayes* (1957), 11 Ill. 2d 178, 185.) This is similarly recognized in section 9—507(2) of the Code, which provides that "[t]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." (Ill. Rev. Stat. 1983, ch. 26, par. 9—507(2).) Thus, it has consistently been held that mere inadequacy of price in the absence of fraud or mistaken or illegal practice will not vitiate a sale. (*Louis Zahn Drug Co. v. Bank of Oak Brook Terrace* (1981), 95 Ill. App. 3d 435, 442-43; *Chicago City Bank & Trust Co.*, 86 Ill. App. 3d at 456; *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 815. *Cf. Illini Federal Savings & Loan Association v. Doering* (1987), 162 Ill. App. 3d 768, 771 (mortgage foreclosure proceeding in which the court, noting that there was no requirement that the sale price be equal to the value of the property, stated that "absent any fraud or irregularity in the foreclosure proceeding, the price at which the property is sold is deemed to be the conclusive measure of its value for purposes of setting a deficiency judgment").) We do not depart from this well-established rule.

However, the trial court in the instant action concluded that plaintiff engaged in a *mistaken practice* in that it relied upon an apprais-

er's report that it knew or ought to have known was too low. The court stated that plaintiff did not conduct a thorough investigation for making its bid and that plaintiff's appraiser was just going through the motions without any real substance behind his opinion. Thus, the court found plaintiff's bid to be commercially unreasonable.

■ Whether a sale is commercially reasonable is a question for the trier of fact. (*Heritage Standard Bank & Trust Co.*, 149 Ill. App. 3d at 571; *Ford Motor Credit Co. v. Jackson* (1984), 126 Ill. App. 3d 124, 126-27; *Spillers v. First National Bank* (1980), 81 Ill. App. 3d 199, 204.) The trial court's findings are entitled to great weight and will not be reversed unless they are against the manifest weight of the evidence. *Spillers*, 81 Ill. App. 3d at 204.

In reviewing the trial court's decision in the instant action, we note that the cases do not provide much guidance as to what constitutes a mistaken practice. However, somewhat instructive is *In re Application of Bickel* (1973), 14 Ill. App. 3d 813, 816, wherein the court stated the factors it relied on in support of its conclusion that fraud or mistaken or illegal practice *were not* present. In that case, the court noted that the debtors did not claim that they were ignorant as to what was transpiring, did nothing prior to or after the sale with reference to the method, manner, time, place, or terms of the sale, and attended the sale with counsel without making objections. 14 Ill. App. 3d at 816.

In the instant action, unlike *In re Application of Bickel*, one of the debtors was present at the sale and objected to plaintiff's bid on the basis that it was too low. More importantly though, the evidentiary hearing revealed facts which rendered the appraisal relied on by plaintiff of dubious validity. Specifically, it was established that plaintiff's appraiser had a prior business relationship with plaintiff and had appraised the subject lots for plaintiff in 1983. Curiously, the values assigned to the property in both the 1983 and 1985 appraisals were identical. In addition, plaintiff's appraiser testified that he made his conclusion of value after one visit to the property, and subsequently used an associate to "gather data" to determine the accuracy of his conclusions. These factors, coupled with plaintiff's knowledge of the 1983 appraisals and values stated within them and its further knowledge of the values attributed to the property by defendants, led the court to conclude that plaintiff engaged in a "mistaken practice" in that it "relied upon an appraiser's report that it knew, or ought to have known was too low." The court clearly stated that it found that plaintiff's appraisal was without substance and lacking in foundation. The facts adduced at the evidentiary hearing support that conclusion.

■ Accordingly, we conclude that the trial court, in light of its determination that plaintiff engaged in a mistaken practice, correctly found plaintiff's bid to be commercially unreasonable. Our ruling does not, as plaintiff suggests, stand for the proposition that failure to bid fair market value is a mistaken practice or renders a sale commercially unreasonable. Indeed, we expressly reject such an interpretation. Rather, we only find that the trial court's ruling that plaintiff's bid was without substance and lacking in foundation constituted a sufficient mistaken practice to support a decision that the sale was commercially unreasonable.

Having found that the trial court correctly ruled that plaintiff's bid was commercially unreasonable, we next turn to whether, on that basis, the court correctly barred any deficiency judgment. Plaintiff contends that the trial court committed reversible error in barring any deficiency judgment and should have instead reduced the amount of the deficiency by $50,000, the difference between plaintiff's bid and the fair market value assigned to the property at the evidentiary hearing. We agree.

■ It should initially be noted that defendants rely on our opinion in *Heritage Standard Bank & Trust Co.* for the proposition that a deficiency judgment *depends* on a determination of commercial reasonableness. This court stated:

> "[T]he creditor's right to a deficiency judgment may depend on whether the foreclosure sale was commercially reasonable. *** The key component in assessing commercial reasonableness is, of course, the sale price.
>
> The absence of a finding by the trial court on the sufficiency of the price precludes its approval of the remaining aspects of the sale from being a conclusive finding of commercial reasonableness. Because the entry of a deficiency judgment *and the amount of that judgment* depend on a determination of commercial reasonableness by the trial court, this cause must be remanded for an evidentiary hearing on the propriety of the amount bid by [plaintiff] at the foreclosure sale." (Emphasis added.) (149 Ill. App. 3d at 571.)

Thus, our opinion in the first appeal does not stand for the proposition that a finding of commercial unreasonableness constitutes an absolute bar to recovery of a deficiency judgment. Indeed, other cases support an opposite conclusion.

Recently, the Illinois Supreme Court considered the related issue of whether a creditor's failure to give notice to a debtor of the sale of collateral absolutely bars the creditor from recovering any deficiency

from the debtor. (*First Galesburg National Bank & Trust Co. v. Joannides* (1984), 103 Ill. 2d 294, 295.) The court noted that there was a conflict within the appellate court, with some courts, including the intermediate court in the case before it, holding that a creditor is absolutely barred from bringing a deficiency action in such cases. (103 Ill. 2d at 297-98.) However, the court further noted that a majority of courts applied a more equitable rebuttable presumption analysis whereby the court presumes that the value of the collateral sold is equal to the total indebtedness. (103 Ill. 2d at 298.) To show its entitlement to a deficiency, the creditor must rebut the presumption and prove that the value of the collateral is less than the indebtedness. (103 Ill. 2d at 298.) After an extensive analysis of article 9 of the Code, the court reversed the lower court ruling which absolutely barred the creditor from maintaining an action for a deficiency. (103 Ill. 2d at 300-01.) In so ruling, the court noted that article 9 of the Code did not contain any basis for concluding that failure to give proper notice of a judicial sale results in an absolute bar of any deficiency occurring as a result of that sale. (103 Ill. 2d at 299-300.) The court stated:

> "The absolute-bar rule is also contrary to the intendment of article 9 that penal damages or results be avoided and that the aggrieved party be placed in 'as good a position as if the other party had fully performed.' [Citation.] The absolute-bar rule, by barring a deficiency action regardless of whether the debtor has suffered damage from the lack of notice, provides a windfall for the debtor and arbitrarily penalizes the creditor. ***
>
> The rebuttable-presumption rule is more fair and is consistent with the above-stated intendment of article 9. If a creditor fails to give notice, the presumption is raised that the value of the collateral is equal to the indebtedness. If the creditor rebuts this presumption and shows, too, that the sale was commercially reasonable, he may maintain an action against the debtor or, of course, the guarantor, for any deficiency. (103 Ill. 2d at 300.)

The court went on to state that the imposition of the rebuttable presumption rule would provide an adequate deterrent to creditors conducting improper sales. 103 Ill. 2d at 301.

In the instant action, plaintiff cites *First Galesburg National Bank & Trust Co.* for the analogous proposition that failure to conduct a commercially reasonable sale does not absolutely bar a deficiency judgment. Certainly, that case is distinguishable from the instant action in that the issue before that court was whether failure to

give *proper notice*, not failure to *conduct a commercially reasonable sale*, precluded collection of a deficiency judgment. (103 Ill. 2d at 295.) In addition, certain language in that decision is troubling to plaintiff's position in that the court, in applying the rebuttable presumption rule to those facts, stated that a creditor may maintain an action for a deficiency if it rebuts the presumption that the collateral is equal to the indebtedness *"and shows, too, that the sale was commercially reasonable."* (Emphasis added.) (103 Ill. 2d at 300.) Defendants argue that this language is a necessary requirement which plaintiff has failed to satisfy. However, notwithstanding these differences, the thrust of the court's opinion squarely supports plaintiff's position. Regardless of whether the impropriety is in the notice or the reasonableness of the sale itself, absolutely barring the creditor any deficiency would provide the debtor with a windfall and arbitrarily penalize the creditor. (See 103 Ill. 2d at 300.) Just as the absolute bar rule in a failure to give notice case is contrary to the intendment of article 9 that penal damages or results be avoided and that the aggrieved party be placed in as good a position as if the other party had fully performed, so would such a rule be contrary to that goal in a failure to conduct a commercially reasonable sale case. Indeed, because a debtor in a failure to give notice case has no opportunity to redeem the collateral, it would seem that such a factual situation would provide the stronger basis for precluding any deficiency. Yet, our supreme court's rejection of such a result in favor of the more equitable rebuttable presumption test signals application of a similar holding in cases arising under less egregious facts, such as in the case before this court.

At least one court has applied the rebuttable presumption test in a case where a sale was held to be commercially unreasonable. (See *Ford Motor Credit Co. v. Jackson* (1984), 126 Ill. App. 3d 124, 128.) Although that case was decided prior to the supreme court's invalidation of the absolute bar rule, it is nonetheless instructive in that it held that the absolute bar rule was not applicable to cases arising on commercial unreasonableness grounds. (126 Ill. App. 3d at 128.) In distinguishing the case before it from a lack of notice case, the court noted that a lack of notice case necessitates an absolute bar because it places a debtor in the position of challenging the creditor's evidence of commercial reasonableness of the sale without ever attending the sale. (126 Ill. App. 3d at 128.) The court went on to note that the same dilemma was not created where the creditor fails to conduct a commercially reasonable sale. (126 Ill. App. 3d at 128.) Accordingly, the court applied the rebuttable presumption test and held that a creditor's failure to conduct a commercially reasonable sale creates a

presumption that the value of the collateral is equal to the amount of the debt, and the creditor must rebut that presumption and show that the value of the collateral is equivalent to its sale price before it can recover damages. 126 Ill. App. 3d at 128.

On the basis of the foregoing, we hold that an absolute bar to collection of any deficiency resulting from a judicial sale conducted pursuant to article 9 is improper. The rebuttable presumption analysis is a more equitable means of determining a creditor's right to a deficiency judgment. Since the court in the instant action determined that plaintiff's bid was $50,000 less than the fair market value of the property, we reverse that portion of the trial court's judgment barring any deficiency and remand this case to the trial court for calculation of the deficiency amount and entry of an order awarding plaintiff the amount of the deficiency less $50,000.

Affirmed in part, reversed in part, and remanded with directions.

UNVERZAGT and NASH, JJ., concur.