MICHAEL MUNAO *et al.*, Plaintiffs and Counterdefendants-Appellees, v. NICHOLAS LAGATTUTA *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (3rd Division)   No. 1—96—1990

Opinion filed February 18, 1998.

Philip J. Rock and Kevin W. Horan, both of Rock, Fusco, Reynolds, Crowe & Garvey, Ltd., of Chicago, and John C. Vojta, of Vojta & Lagattuta, P.C., of Schaumburg, for appellants.

Howard M. Turner, of Chicago, for appellees.

JUSTICE CAHILL delivered the opinion of the court:

After defendants defaulted on a note and lease, plaintiffs, Michael and Charlene Munao, sued to recover the balance owed on the note and lease. After a bench trial, the trial court ruled for plaintiffs on a deficiency claim and against defendants, Nicholas Lagattuta, Dennis J. Lullo, and Lullo Food Service Company, on their counterclaim for surplus received by plaintiffs from retention of the security. The trial court found that defendants were entitled to a credit on the

note in the amount of $9,067.07. The trial court entered judgment for plaintiffs in the amount of $83,483.38 on the note and $13,093.81 on the lease. Defendants appeal. We affirm.

Between 1980 and 1990 plaintiffs owned and managed a restaurant known as "Dilly Deli" in Des Plaines, Illinois. On August 24, 1990, the plaintiffs sold Dilly Deli to defendants for $104,000. Defendants paid $46,000 at closing and gave plaintiffs a note for the balance, $58,000.

The individual and corporate defendants signed a security agreement with the note. Collateral for the security agreement included "[a]ll equipment, inventory, fixtures used in connection with 'the Dilly Deli'" but did not include goodwill.

Defendant corporation Lullo Food Service Company signed a lease for $2,000 rent per month plus taxes and insurance. The lease was guaranteed by individual defendants Lullo and Lagattuta.

Defendant Lullo and his wife, Lillian Lullo, managed the restaurant. Lagattuta was a silent partner. Shortly after the sale, defendants changed the name of the restaurant to "Papa D's."

For six days after closing, plaintiffs spent time at the restaurant teaching the Lullos how to manage the restaurant. The transition is relevant to a collateral issue raised by defendants: that the trial court's judgment ignored goodwill in calculating the value of collateral.

Plaintiffs observed changes in the way the restaurant was run in the course of these six days. Instead of cooking homemade soup and preparing food to order, defendants served canned soup and precooked food. They served hot dogs that had been cooked the day before and bread that was not fresh. Instead of buying meat and cheese from restaurant purveyors, they bought food from a discount warehouse. They bought less expensive brownies and tuna. The system of taking orders changed and mistakes were made in taking orders. Food was served in paper bags rather than on dishes or in baskets. Lillian and Dennis Lullo smoked while they worked.

A former customer, George Heyman, also noticed changes in the restaurant. He ate at the restaurant several times a week when plaintiffs owned it. He said that, after defendants took over, the restaurant was smoky, tables were not kept as clean, the restroom was dirty and the food quality declined. He eventually stopped eating there.

Defendants paid the first two months' rent and tax payments late. They claimed that business was slow because of road construction in front of the restaurant. Plaintiffs accepted the late payments and agreed to defer real estate tax payments until the road construc-

tion ended. In November defendants failed to pay rent and to make payment on the note.

Defendant Lagattuta testified that he met with plaintiff Michael Munao in November or December. They agreed that if the restaurant was returned to the plaintiffs, defendants would be released from their obligation on the note and lease. Plaintiff Michael Munao denied that the conversation took place.

Plaintiff's attorney, Joseph Mulhern, testified that he spoke with defendant Lagattuta. Mulhern told Lagattuta that surrender of the keys was a condition precedent to a settlement discussion. Lagattuta never told Mulhern he had an agreement with plaintiffs to be released from his obligations in exchange for return of the restaurant. Lagattuta delivered the keys to Mulhern's office on January 3, 1991. Mulhern then had several settlement discussions with Lagattuta and his attorney.

After plaintiff Michael Munao received the keys, he hired Burton Tunick to appraise the restaurant equipment and to determine the fair market value. Tunick appraised the fixtures, furniture and equipment at a fair market value of $8,590. Michael Munao testified that based on prices he paid for similar merchandise, the useable inventory left had a value of $477.07.

On March 15, 1991, plaintiffs reopened the restaurant under the name of "C&M." Plaintiff Michael Munao claims that he then credited the balance due on the note with the appraised fair market value of the fixtures, equipment and furniture, and $477.07 for inventory. Munao testified that he did this because he believed plaintiffs "bought" the equipment and inventory when they used it after the restaurant was returned. In October 1991, after losing $42,023, plaintiffs closed the restaurant. The building was then leased to Roger Walsh until April 1992. In November 1993, the plaintiffs sold the real estate, equipment and furniture.

At trial, two witnesses testified about the value of the collateral. Tunick testified for plaintiffs about the method he used to calculate the fair market value of the equipment. After looking at the equipment on site, he called manufacturers and dealers of used restaurant equipment to learn the resale value.

Erwin Linkman testified for defendants that the value of the equipment and furniture was $71,500. He based this estimate on the inventory, equipment, and "key value" of the restaurant. He defined "key value" as the earning power of the business. He did not examine the equipment or inventory, but used the 1988 and 1989 financial statements for Dilly Deli to support his evaluation.

Linkman testified that his method of evaluating Papa D's differed

from the way he normally evaluated restaurants. He normally used three years' income to evaluate a business. His opinion here, however, was based only on Dilly Deli's income for two years. He did not consider 1990 income, which reflected losses under Lullo's management. His opinion was also based on the assumption that "no significant operational changes were made in the 120 day period between September 1, 1990 and December 27, 1990."

Defendants argue on appeal that plaintiffs should be barred from a deficiency judgment because their actions after defendants returned the keys established one of the following: (1) an election to retain the collateral in full satisfaction of the debt under section 9—505(2) of the Uniform Commercial Code (the Code) (810 ILCS 5/9—505(2) (West 1996)); or (2) a sale of the collateral either to themselves or to the November 1993 purchasers, in violation of section 9—504 of the Code (810 ILCS 5/9—504 (West 1996)). They also argue that the court failed to account for the restaurant's goodwill and erred in finding for plaintiffs on defendants' counterclaim.

■ We first address defendants' argument that plaintiffs' behavior after return of the keys established an election to retain the collateral in full satisfaction of the debt under the provisions of section 9—505(2) of the Code. Section 9—505(2) provides that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation." 810 ILCS 5/9—505(2) (West 1996).

Defendants contend that when the plaintiffs took the keys back, reopened the restaurant, leased the restaurant, and finally sold the property, their actions established an election to retain the collateral in satisfaction of the debt.

Plaintiffs contend that they did not accept the collateral in full satisfaction of the debt. They argue that they disposed of the collateral by selling it to themselves when they credited the amount due on defendants' note with the appraised value of the equipment and inventory.

■ Defendants respond that plaintiffs could not have purchased the collateral under these facts because the Code restricts a secured party's right to purchase collateral at a private sale. A secured party may purchase collateral at a private sale only "if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations." 810 ILCS 5/9—504(3) (West 1996). Defendants argue that the collateral here is of neither type, and that because plaintiffs were not allowed to purchase the property under the Code, their actions must be read in only one way: as an election to retain the collateral. But plaintiffs'

sale of the collateral to themselves does not compel such a conclusion. It only compels a conclusion that plaintiffs concede: that the sale of the collateral to themselves violated section 9—504(3) of the Code.

Plaintiffs further argue that there can be no retention since there was no written notice of plaintiffs' intention to retain the collateral in satisfaction of the debt as required by the Code. Plaintiffs cite *Stensel v. Stensel*, 63 Ill. App. 3d 639, 380 N.E.2d 526 (1978), for the proposition that an implicit or constructive retention is not possible. In *Stensel*, the fourth district held that a section 9—505(2) retention could not occur absent the written notice required by the Code. 63 Ill. App. 3d at 642. *Cf. Patrick v. Wix Auto Co.*, 288 Ill. App. 3d 846, 681 N.E.2d 98 (1997) (requiring strict compliance with statutory notice requirement in debtor's suit for damages based on creditor's noncompliance with section 9—505(2)). This view is shared by courts of several other jurisdictions. See, *e.g.*, *In re Nardone*, 70 B.R. 1010, 1016-17 (Bankr. D. Mass. 1987); *Alamosa National Bank v. San Luis Valley Grain Growers, Inc.*, 756 P.2d 1022 (Colo. App. 1988); *S.M. Flickinger Co. v. 18 Genesee Corp.*, 71 A.D.2d 382, 423 N.Y.S.2d 73 (1979). These courts reason that section 9—505(2) was not designed to protect the debtor. See *Jones v. Morgan*, 58 Mich. App. 455, 461, 228 N.W.2d 419, 423 (1975); *S.M. Flickinger*, 71 A.D.2d at 386, 423 N.Y.S.2d at 76. They note that a debtor's remedies do not lie in section 9—505(2), but in section 9—507. The debtor may restrain or compel disposition of the collateral or charge the creditor with the loss that results from an unauthorized disposition. 810 ILCS 5/9—507 (West 1996).

Defendants direct us to cases in other jurisdictions that reject this approach. Other jurisdictions take two alternative approaches. Some courts hold that a section 9—505(2) election to retain collateral in satisfaction of a debt can be implied from an unreasonably long retention of collateral. See, *e.g.*, *In re Boyd*, 73 B.R. 122, 124-25 (Bankr. N.D. Tex. 1987); *Moran v. Holman*, 514 P.2d 817, 820-21 (Alaska 1973). See also *Schultz v. Delaware Trust Co.*, 360 A.2d 576, 578-79 (Del. Super. Ct. 1976); *Service Chevrolet, Inc. v. Sparks*, 99 Wash. 2d 199, 203, 660 P.2d 760, 763 (1983). These courts are generally guided by a concern that the creditor may profit by his own failure to give notice. See *Service Chevrolet*, 99 Wash. 2d at 203, 660 P.2d at 763.

Other courts require the debtor to prove that the creditor intended to accept the collateral in satisfaction of the obligation. Proof of intent is required under common law accord and satisfaction. See *Nelson v. Armstrong*, 99 Idaho 422, 430, 582 P.2d 1100, 1108 (Idaho 1978); *Winters National Bank & Trust Co. v. Saker*, 66 Ohio App. 2d 31, 35, 419 N.E.2d 890, 893-94 (1979).

■ We see no reason to deviate from the rule set out in *Stensel* that a retention cannot be imputed to the creditor without written notice to the debtor of the intent to retain. Section 9—505(2) states that a creditor may elect to retain the collateral in satisfaction of the debt. The Code creates a statutory presumption that the creditor elected to retain the collateral in satisfaction of the debt when notice is given. Absent written notice, a debtor is not entitled to the presumption. He has the burden of establishing that the parties agreed to a retention of the collateral in full satisfaction of the debt. This reading of section 9—505(2) is consistent with section 9—504(2), which states that "[i]f the security interest secures an indebtedness, *** *unless otherwise agreed*, the debtor is liable for any deficiency." (Emphasis added.) 810 ILCS 5/9—504(2) (West 1996).

In some circumstances, a debtor may be able to establish that the creditor intended to retain the collateral in full satisfaction of the debt without the statutory presumption operating in the debtor's favor. Such circumstances do not exist here where there was no written notice or other clear proof reflecting an intent to accept the collateral in full satisfaction of defendants' debt.

Without a presumption, defendants undertook a difficult task in trying to prove that plaintiffs chose to accept $9,067.07 worth of equipment and inventory in full satisfaction of their $58,000-plus-interest debt. The disparity between the value of the collateral and the debt was so great that plaintiffs' acceptance of the collateral in full satisfaction of the debt would have made little economic sense. Defendants did not overcome plaintiffs' evidence that plaintiffs "sold" the collateral to themselves at a fair price and did not intend to retain the collateral in full satisfaction of the debt.

■ We next address the circumstances under which a secured creditor may obtain a deficiency judgment even though the collateral was disposed of in violation of section 9—504 of the Code. Plaintiffs concede, and we agree, that whether plaintiffs bought the equipment themselves or sold it in November 1993, plaintiffs were not in compliance with section 9—504. Crediting the amount due on defendants' note with the equipment's appraised value and "purchasing" the equipment themselves was improper because the Code prohibits a secured creditor from purchasing the collateral at a private sale unless the collateral is customarily sold in a recognized market or is the subject of widely distributed price quotations. 810 ILCS 5/9—504(3) (West 1996). Further, plaintiffs did not give notice to defendants when they decided to "purchase" the equipment themselves or when they sold the equipment in November 1993.

But plaintiffs' improper disposition of the collateral does not "toll

the death" of plaintiffs' cause of action as defendants would have us hold. Defendants urge us to follow *Lamp Fair, Inc. v. Perez-Ortiz*, 888 F.2d 173, 176 (1st Cir. 1989), and find that the plaintiffs cannot maintain a deficiency action here. In *Lamp Fair*, the United States Court of Appeals for the First Circuit concluded, on two alternative grounds, that the secured creditor could not retain the collateral and also obtain a deficiency judgment. First, the court found the secured party's actions amounted to a "retention" under section 9—505(2). *Lamp Fair*, 888 F.2d at 177. This ground for denying a deficiency judgment is inappropriate in light of our conclusion that a section 9—505(2) election to retain did not occur here.

*Lamp Fair* also concluded that under section 9—504 the secured party's failure to dispose of collateral resulted in a loss of the right to a deficiency judgment because a deficiency judgment would circumvent " 'the Code's mandate that an effective election to retain the collateral results in a complete discharge of the underlying obligation.' " *Lamp Fair*, 888 F.2d at 178, quoting *In re Appeal of Copeland*, 531 F.2d 1195, 1207 (3d Cir. 1976).

We reject the second *Lamp Fair* approach as well. It is inconsistent with Illinois court holdings that improper disposition does not bar a plaintiff's deficiency claim. See *First Galesburg National Bank & Trust Co. v. Joannides*, 103 Ill. 2d 294, 469 N.E.2d 180 (1984) (failure of secured creditor to give notice of sale does not bar deficiency judgment); *Standard Bank & Trust Co. v. Callaghan*, 177 Ill. App. 3d 973, 980-82, 532 N.E.2d 1015 (1988) (commercially unreasonable sale does not bar deficiency judgment).

Defendants argue that *First Galesburg* holds that a deficiency judgment may be obtained only if the secured creditor shows both that the value of the collateral was less than the indebtedness and that the sale was commercially reasonable. 103 Ill. 2d at 298, 469 N.E.2d at 181. We have no quarrel with this reading of *First Galesburg*. However, even if the disposition of the collateral were presumptively a commercially unreasonable sale, plaintiffs are still entitled to rebut the presumption that the collateral is equal to the debt and to overcome the presumption of a commercially unreasonable sale by showing that the sale price for the collateral was fair. See *First Galesburg*, 103 Ill. 2d at 300; *Standard Bank & Trust Co. v. Callaghan*, 177 Ill. App. 3d at 980-82. As the court in *Callaghan* noted, "[r]egardless of whether the impropriety is in the notice or the reasonableness of the sale itself, absolutely barring the creditor any deficiency would provide the debtor with a windfall and arbitrarily penalize the creditor." *Callaghan*, 177 Ill. App. 3d at 981. Plaintiffs' improper disposition of the collateral results only in a rebuttable

presumption that the collateral is equal to the debt. If the secured party rebuts this presumption, he is entitled to recover any proven deficiency. See *First Galesburg National Bank & Trust Co.*, 103 Ill. 2d at 300-01. Whether the creditor has overcome the presumptions working against him with sufficient evidence is for the trier of fact. See *A.A. Store Fixture Co. v. Kouzoukas*, 87 Ill. App. 3d 631, 635, 410 N.E.2d 131 (1980).

At trial, both parties presented evidence of the value of the collateral received by plaintiffs. The trial judge found plaintiffs' witness to be more reliable and shaped his judgment around that witness's evaluation. We will affirm a trial court's valuation on review unless it is against the manifest weight of the evidence. *Kalabogias v. Georgou*, 254 Ill. App. 3d 740, 749, 627 N.E.2d 51 (1993). Here, the trial judge carefully reviewed the content and reliability of each witness's testimony. The trial judge found Tunick's testimony buttressed by evidence that defendants significantly changed the business for the worse. By establishing fair market value, plaintiffs successfully rebutted the presumption that the value of the collateral is equal to the debt. The trial court's finding was not against the manifest weight of the evidence.

Defendants contend that plaintiffs failed to rebut the presumption that the collateral equals the amount of the debt because they ignored the goodwill of the restaurant in their calculations. The Illinois cases relied upon by defendants hold that the transfer of goodwill is incident to the transfer of a business in various situations. See *In re Fitch*, 174 B.R. 96 (Bankr. S.D. Ill. 1994); *Weitekamp v. Lane*, 250 Ill. App. 3d 1017, 1024, 620 N.E.2d 454 (1993); *Russell v. Jim Russell Supply, Inc.*, 200 Ill. App. 3d 855, 861, 558 N.E.2d 115 (1990). This case involves a security agreement separate from the sales contract that does not mention goodwill or the business itself. The collateral encompassed by the security agreement includes only equipment, inventory, and fixtures.

Defendants further argue that the value of the restaurant's goodwill must be credited to defendants to avoid unjust enrichment. Defendants only cite *Lilly v. Terwilliger*, 244 Mont. 93, 98-101, 796 P.2d 199, 202-04 (1990), where the trial court used the value of goodwill to offset a deficiency despite the fact that goodwill was not part of the security agreement. This offset was not challenged or discussed on appeal, so the case is of little precedential value.

Even if we adopt defendants' argument that a credit for goodwill must be factored in, the record here supports plaintiffs' position that they were not "enriched" with the goodwill of Papa D's upon return of the restaurant. The evidence established that whatever goodwill

defendants "purchased" was dissipated by defendants' conduct of this business.

Based on our conclusion that the trial court did not err in calculating plaintiffs' deficiency judgment, we need not address defendants' argument that they are entitled to the value of the collateral exceeding the amount of their debt.

Affirmed.

GORDON and COUSINS, JJ., concur.