In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3508 & 00-4333

AAR AIRCRAFT & ENGINE GROUP, INC.,

Plaintiff-Appellee,

v.

CHARLES EDWARDS,

Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 2302--William J. Hibbler, Judge.

Argued September 28, 2001--Decided November 15, 2001

   Before FLAUM, Chief Judge, and BAUER and
EVANS, Circuit Judges.

   EVANS, Circuit Judge.  AAR sold Charles
Edwards' company (Kiwi International) an
airplane engine on an installment plan,
requiring Edwards to sign an "absolute"
and "unconditional" personal guaranty for
the loan. The purchase price was
$1,325,000. After paying around $325,000
on the note, Kiwi missed a payment, and
AAR accelerated the debt and sued Edwards
to collect just over $1 million remaining
on the contract. AAR also repossessed the
engine, then "bought" it back at an
auction for $250,000--some $750,000 less
than its estimated value--when no one
else appeared and entered a bid.
Therefore, when the district court
entered summary judgment for AAR, it got
both a $1 million damage award against
Edwards plus the engine, which was worth
roughly the same amount. So it got, in
essence, double what it had coming.
Edwards, apparently no meshuggener,
senses that something is not quite right
with this deal so he appeals.

   Edwards was the chairman and principle
shareholder of Kiwi. In 1998 AAR Aircraft
& Engine Group, Inc., a subsidiary of
American Airlines, and Kiwi entered into
a 3-year, monthly-installment sales
agreement for the engine. Edwards'
personal guaranty, which AAR drafted,

provided that he "absolutely and unconditionally" guaranteed Kiwi's debt.

After Kiwi defaulted and filed bankruptcy proceedings in March 1999, AAR accelerated the debt and demanded payment from Edwards. When he didn't pay, AAR filed suit and moved for summary judgment. While awaiting the district court's ruling, AAR repossessed the engine and held an auction where it was the sole bidder, winning the engine for $250,000.

The day after the sale, the district court granted summary judgment for AAR. The decision did not specify a damage amount, so AAR filed a renewed motion for damages. The motion requested an amount reduced by the $250,000 that AAR had "recovered" at auction. The district court entered judgment for just under a million dollars. Pursuant to the guaranty, AAR also moved for and received attorneys fees and costs.

Edwards appealed, arguing that the engine sale was commercially unreasonable in both price and methodology. According to Edwards, the engine was worth $1,075,000. He argues that auctioning the engine was not commercially reasonable because it implied that the engine was defective. Additionally, he notes that AAR advertised the auction as a "secured party sale," which denoted legal problems and may have deterred prospective buyers. The commercially reasonable way to sell an airplane engine, Edwards argues, is through classified ads in airline trade journals.

We review de novo a district court's grant of summary judgment. See Denius v. Dunlap, 209 F.3d 944, 949 (7th Cir. 2000). In doing so, we view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See id. at 950 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The meaning of a guaranty agreement is a question of law, which we review de novo. See Exchange Nat'l Bank of Chicago v. Bergman, 153 Ill. App. 3d 470, 472 (1st Dist. 1987); Chemtool, Inc. v. Lubrication Tech., Inc., 148 F.3d 742, 744-45 (7th Cir. 1998). A guaranty, of course, is a contract, so we apply general rules of contract interpretation

to the dispute. See McLean County Bank v. Brokaw, 119 Ill. 2d 405, 412 (1988).

Here, the guaranty states, "the undersigned hereby absolutely and unconditionally guarantees to Creditor the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations" of Kiwi. It goes on to state, "[t]his is an absolute, unconditional, and continuing guaranty of payment of the indebtedness and shall continue to be in force and be binding upon the undersigned until such time as all indebtedness is paid in full." It also states, "[c]reditor shall not be required first to resort for payment of the indebtedness to Debtor or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for indebtedness, before enforcing this guaranty."

This one-sided language clearly states that Edwards' guaranty is absolute and that AAR need not resort to selling the plane engine before seeking satisfaction from him. Therefore, AAR argues that Edwards may not quibble with how AAR chose to sell the collateral. Edwards counters that the guaranty did not waive his statutory right to a commercially reasonable sale of collateral, see 810 Ill. Comp. Stat. 5/9-504(3) (codifying U.C.C. sec. 9-504(3)), because that right is unwaivable.

Because the district court exercised diversity jurisdiction, we must apply Illinois law as the Illinois Supreme Court would apply it. See Home Valu, Inc. v. Pep Boys, 213 F.3d 960, 963 (7th Cir. 2000). The Illinois Supreme Court has not ruled directly on whether a guarantor may waive commercial reasonableness. The Illinois Appellate Court, however, noted that a guarantor may waive commercial reasonableness. See Chemical Bank v. Paul, 244 Ill. App. 3d 772, 781 (1st Dist. 1993); Lincoln Park Fed. Sav. & Loan Ass'n v. Carrane, 192 Ill. App. 3d 188, 192 (1st Dist. 1989). The United States District Court for the Northern District of Illinois has interpreted Illinois law in the same way. See National Acceptance Co. of Am. v. Wechsler, 489 F. Supp. 642, 647 (N.D. Ill. 1980).

Although persuasive, the Illinois Appellate Court decisions do not bind us. When a state supreme court has not spoken on an issue, the decisions of the state's intermediate appellate courts are authoritative unless we have a compelling reason to doubt that they have stated the law correctly. See Home Valu, 213 F.3d at 963; Green v. J.C. Penney Auto Ins. Co., 806 F.2d 759, 761 (7th Cir. 1986).

Here, several facts compel us to conclude that Chemical Bank and Lincoln Park did not accurately predict how the Illinois Supreme Court would rule on a guarantor's ability to waive commercial reasonableness. First, the Illinois Supreme Court held that guarantors are debtors for purposes of 810 Ill. Comp. Stat. 5/9-504(3). See Watseka First Nat'l Bank v. Ruda, 135 Ill. 2d 140, 158 (1990); First Galesburg Nat'l Bank & Trust Co. v. Joannides, 103 Ill. 2d 294, 298 (1984); Commercial Disc. Corp. v. Bayer, 57 Ill. App. 3d 295, 299 (1st Dist. 1978); Ford Motor Credit Co. v. Solway, 825 F.2d 1213, 1217 (7th Cir. 1987). Second, state statute prohibits debtors from waiving commercial reasonableness. See 810 Ill. Comp. Stat. 5/9-501(3) (codifying U.C.C. sec. 9-501(3)). Combining these two principles, it follows that the Illinois Supreme Court would prohibit guarantors from waiving commercial reasonableness. Third, the appellate court cases discussed commercial reasonableness in only a cursory way. Chemical Bank merely noted in dicta Lincoln Park's holding that guarantors could waive commercial reasonableness. See Chemical Bank, 244 Ill. App. 3d at 781. Lincoln Park itself announced its holding without addressing sec. 9-501(3)'s prohibition on waivers of commercial reasonableness. See Lincoln Park, 192 Ill. App. 3d at 192-93. Therefore, because only cursory analysis supported Chemical Bank and Lincoln Park, and because Illinois Supreme Court precedent seems to contradict their conclusions, we decline to give them controlling weight.

Although the Northern District of Illinois held in Wechsler that guarantors may waive commercial reasonableness, it based this holding on policy rather than on Illinois law. The court noted that the guarantor usually does not own the collateral, and therefore has a lesser

interest in it than the debtor. See 489 F. Supp. at 647-48. It also noted that guaranties facilitate loans by giving lenders ready sources from which to collect if debtors default. See id. at 648. Wechsler, however, specifically noted the dearth of Illinois precedent on these issues. See id. at 647. Because no clear statement of Illinois law supported Wechsler and its progeny, see Sanwa Bus. Credit Corp. v. Harris, No. 91 C 0204, 1991 WL 156116, at *5-6 (N.D. Ill. Aug. 6, 1991); United States v. Crispen, 622 F. Supp. 75, 79 (N.D. Ill. 1985); Exchange Nat'l Bank of Chicago v. Brown, No. 84 C 10801, 1985 WL 2274, at *5 (N.D. Ill. August 9, 1985), we find their reasoning unpersuasive. Indeed, the Northern District of Illinois expressly called Wechsler's holding into doubt in Commercial Discovery Corp. v. King, 515 F. Supp. 988, 992 (N.D. Ill. 1981), noting that Wechsler's holding rested on a questionable interpretation of Bayer, 577 Ill. App. 3d 295.

King also held that sec. 9-501(3) prohibits guarantors from waiving notice of a sale of collateral. See id. at 990. King's analysis is persuasive with regard to commercial reasonableness because the same statutory provision creates both that right and the right to notice. See 810 Ill. Comp. Stat. 5/9-504(3). The Illinois Supreme Court also held that guarantors may not waive the right to notice. See Watseka, 135 Ill. 2d at 158; Joannides, 103 Ill. 2d at 298. Because the rights to commercial reasonableness and notice are so closely related, we think it follows that the Illinois Supreme Court would hold that guarantors may not waive the right to commercial reasonableness.

AAR argues, however, that the rights to notice and commercial reasonableness implicate different policy concerns. Notice allows the guarantor to raise in advance procedural concerns about the collateral sale. Commercial reasonableness complaints, on the other hand, necessarily arise after the sale and could unduly burden creditors in disposing of collateral. Although we understand this concern, the distinction that AAR draws between the rights to notice and commercial reasonableness is illogical. The policy underlying the right to notice, as AAR conceded at oral

argument, is allowing the debtor or guarantor to affect the collateral sale by, among other things, attracting buyers. Although AAR argues to the contrary, the purpose of notice, therefore, is to assure commercial reasonableness. It defies logic to say that Illinois law guards the right to notice so jealously that it prohibits debtors and guarantors from waiving it, but that it also allows them to waive the underlying right to commercial reasonableness.

   Therefore, we draw on the Illinois Supreme Court's holdings in other closely related contexts and determine that it would prohibit guarantors from waiving commercial reasonableness. Additionally, we note that the Illinois Supreme Court tends to follow the majority rule on U.C.C. issues. See Joannides, 103 Ill. 2d at 301 (following majority rule in applying "rebuttable presumption" approach as remedy for deficient notice of collateral sale); Northrop Corp. v. Litronic Indus., 29 F.3d 1173, 1178 (7th Cir. 1994) (noting that Illinois courts tend to follow the majority rule on U.C.C. issues). Because we encourage consistent nationwide application of the Uniform Commercial Code, when a state tends to follow majority rules on U.C.C. issues, we presume that it would adopt the majority rule for the issue at hand. See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp., 186 F.3d 815, 819 (7th Cir. 1999). Therefore, because a majority of jurisdictions that have considered the issue prohibits guarantors from waiving U.C.C. sec. 9-504(3)'s right to commercial reasonableness, we conclude that Illinois would follow suit./1 Thus, Edwards' purported waiver of commercial reasonableness was invalid./2 This result prevents economic waste and unjust enrichment because creditors who believe that they have obtained a waiver have no incentive to behave in a commercially reasonable manner. And the absurd result here--a huge windfall to AAR--shows that it had no incentive to do other than enrich itself in this deal.

   Although we held in other contexts that Illinois law permits absolute waivers to defeat all of a guarantor's defenses, those cases did not involve U.C.C. sec. 9-501(3)'s express prohibition on waivers of commercial reasonableness. See FDIC v.

Rayman, 117 F.3d 994, 998 (7th Cir. 1997); United States v. Shirman, 41 F.R.D. 368, 370 (N.D. Ill. 1966). Because state law prohibits waivers of commercial reasonableness, especially ones drawn up by creditors themselves, the defense survives even guaranties purporting to be absolute and unconditional.

Finally, Edwards argues that if we reverse the underlying judgment, we should also reverse the award of attorneys fees. Even if the district court finds that AAR's behavior was commercially unreasonable, AAR might still be entitled to attorneys fees. This is so because a finding of commercial unreasonableness would entitle Edwards to only a rebuttable presumption that the engine's value equaled the amount of the debt. It would not absolutely bar AAR's ability to recover. See Munao v. Lagattuta, 294 Ill. App. 3d 976, 983-984 (1998); Standard Bank & Trust Co. v. Callaghan, 177 Ill. App. 3d 973, 981-82 (1988); Ford Motor Credit Co. v. Jackson, 126 Ill. App. 3d 124, 128 (1984). Thus, AAR could still prove that the engine was worth less than the remaining debt, in which case it could recover the discrepancy from Edwards, entitling AAR to attorneys fees.

Therefore, we REVERSE and REMAND so that the district court may determine whether AAR's sale of the engine was commercially reasonable and whether AAR is entitled to attorneys fees.

FOOTNOTES

/1 See Tropical Jewelers, Inc. v. Nationsbank, N.A., 781 So. 2d 392, 392-93 (Fla. App. 2000); Security State Bank v. Burk, 100 Wash. App. 94, 99 (2000); Marine Midland Bank v. CMR Indus., Inc., 559 N.Y.S.2d 892, 900 (N.Y. App. Div. 1990); FDIC v. Wrapwell Corp., 922 F. Supp. 913, 923 (S.D.N.Y. 1996) (predicting New York law); Bank of China v. Chan, 937 F.2d 780, 785 (2d Cir. 1991) (predicting New York law); United States v. Contestabile, 989 F.2d 463, 464 (11th Cir. 1993) (applying Georgia law); Davis v. Concord Commercial Corp., 209 Ga. App. 595, 598 (1993); Branan v. Equico Lessors, Inc., 255 Ga. 718, 722 (1986); United States v. Kelley, 890 F.2d 220, 222-23 (10th Cir. 1989) (predicting Kansas law); United States v. Hunter, 652 F. Supp. 774, 779 (D. Kan. 1986) (predicting Kansas law); May v. Women's Bank, 807 P.2d 1145, 1150 (Colo. 1991); Cooper Inv. v. Conger, 775 P.2d 76, 80 (Colo. Ct. App. 1989);

Shawmut Worcester County Bank v. Miller, 398 Mass. 273, 279 (1986); Ford Motor Credit Co. v. Lototsky, 549 F. Supp. 996, 1005 (E.D. Pa. 1982) (applying Pennsylvania law); United States v. Chatlin's Dep't Store, Inc., 506 F. Supp. 108, 112 (E.D. Pa. 1980) (adopting Pennsylvania law as federal rule of decision); United States v. Willis, 593 F.2d 247, 255 (6th Cir. 1979) (applying federal law); but see Borg-Warner Acceptance Corp. v. Johnston, 97 N.C. App. 575, 581 (1990) (holding that guarantor may waive commercial reasonableness); First City Div. of Chase Lincoln First Bank v. Vitale, 510 N.Y.S.2d 766, 768 (N.Y. App. Div. 1987) (holding same).

/2 Edwards argues that the Illinois Supreme Court would draw a distinction between pre-default and post-default waivers of commercial reasonableness, voiding only pre-default waivers. He bases this argument on Bayer, 57 Ill. App. 3d 295, and Solway, 825 F.2d 1213. In Bayer, the court noted that the guarantors had not "waived or modified the notice requirement after the occurrence of default." See id. at 300. This statement, however, was based on express statutory language indicating that guarantors may waive the notice requirement after default. See 810 Ill. Comp. Stat. 5/9-504(3) (requiring secured party to send notice to debtor "if he has not signed after default a statement renouncing or modifying his right to notification of sale."); see also Bayer, 57 Ill. App. at 299 (quoting this language). No parallel language appears in the commercial reasonableness clause, indicating that the statute bars all waivers of commercial reasonableness. In Solway, 825 F.2d at 1217 n.2, the court merely noted in a footnote that it would not reach the question of whether Illinois law permitted pre-default waivers of notice.