CUDAHY, Circuit Judge,
dissenting.
I respectfully dissent from the conclusion of the majority that the mode of distribution of certain sought-after tickets for sports events, as pleaded, is technically an illegal “lottery.” This case is indistinguishable in relevant respects from Lesher v. Baltimore Football Club, 496 N.E.2d 785 (Ind.Ct.App.1986), vacated in part on other grounds, 512 N.E.2d 156 (Ind.1987). The principal ground for distinction asserted by the majority is that in Lesher the application fees of the losing applicants were returned while in the present case they are not. This may be a basis for finding an overcharge here, but it is hardly grounds for elevating the present procedure to the status of an illegal “lottery.”
Lesher relied primarily on a finding of in pari delicto to invalidate that lawsuit and this is an equally valid ground for dismissing this one. With respect to an almost identical scheme in Lesher, the Indiana Court of Appeals stated:
[Pjlaintiffs claim the ticket allocation plan constituted a constitutionally proscribed lottery, yet they participated in the plan, knowing that a “blind lottery” was possible. Even if we were to conclude that the plan did constitute a constitutionally proscribed lottery, we would note the words of our Supreme Court in Swain v. Bussell, 10 Ind. 438, 442 (1858): “If the plaintiff, with the facts before him, saw proper to become a participant in such an illegal and prohibited transaction ... he is not in condition to ask ... the aid of a court.”
Lesher, 496 N.E.2d at 790 n. 1. In predicting how the Indiana Supreme Court would *665 decide a state-law issue, we can obviously look to the Indiana Court of Appeals as persuasive authority. See, e.g., AAR Aircraft & Engine Group, Inc. v. Edwards, 272 F.3d 468, 470 (7th Cir.2001) (observing that, where the state supreme court has not spoken, “the decisions of the state’s intermediate appellate courts are authoritative unless we have a compelling reason to doubt that they have stated the law correctly”). I see no reason why Lesher should not be treated as authoritative in this instance and I find the purported distinction regarding the return of fees to be without significance to the question whether the plaintiffs participated in the ticket-distribution mechanism, “knowing that a ‘blind lottery’ was possible.” Lesher, 496 N.E.2d at 790 n. 1. Although the cited statement by the Indiana Court of Appeals was technically dicta, I find the logic persuasive as applied to the present case.
The efforts by the majority to rely on the relative culpability of the defendant compared with that of the plaintiffs or between a motion for summary judgment and a motion to dismiss are also without significance.
In addition, the argument that the tickets awarded, because of their scarcity, are more valuable than the price originally charged for them is misleading. Face value is in fact the value realized by the issuer. After allocation, they acquire, as a result of the very process of allocation, a resale value, not necessarily to be realized, and for that reason irrelevant.
There are other reasons for excluding this process of ticket distribution from being classified as an illegal “lottery.” One of these is the statutory exemption for “bona fide transactions that are valid under the law of contracts.” Ind.Code § 35-45-5-l(d). This is a very open-ended exemption that is easily applicable to this device — incidental to allocating scarce tickets for popular sports events.